797 P.2d 275

STATE of New Mexico,
Plaintiff–Appellee,

v.

Robert L. WHITAKER, a/k/a Bob
Whitaker, Defendant–Appellant.

No. 11254.

Court of Appeals of New Mexico.

Feb. 6, 1990.

Certiorari Denied March 19, 1990.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Patricia A. Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant appeals the sentence imposed upon him after his nolo contendere plea to five counts of fraud over $2,500 and five counts of making false public vouchers.

Defendant, the county manager for Curry County, supplied false invoices and other documents to obtain the issuance of requisition forms for the purchase of computer equipment. Based on the false documents, the county issued purchase orders and checks. Defendant deposited the checks in a bank account under the name of "National Computer Systems." The sole source of funds for the account was checks from the county, primarily from the county indigent fund. The total amount deposited in the account was $55,848. All money withdrawn from the account was withdrawn by defendant. The amount remaining in the National Computer Systems bank account at the time of sentencing was $2,761.88.

The indictment involved five episodes of misconduct. For each episode the indictment alleged one count of fraud and one count of making false public vouchers. Each count of fraud charged a third-degree felony, carrying a basic sentence of imprisonment of three years. The district court, however, found aggravating circumstances and enhanced the penalty on each count to imprisonment for four years. The sentences on the five fraud counts were ordered to run consecutively, for a total prison term of twenty years. The district court sentenced defendant to a term of eighteen months on each of the false-voucher counts, ordered that those five counts run concurrently with one another, and suspended the sentences. Although a plea bargain required the sentences on the false-voucher charges to run concurrently

with the sentences on the fraud charges, a five-year probation imposed for the false-voucher charges was ordered to commence upon defendant's release from incarceration imposed for the fraud charges. The district court also ordered that any money in the National Computer Systems bank account be turned over to the county by defendant. In addition, as a condition of parole the district court ordered defendant to make restitution to Curry County in the amount of $50,719.20 for moneys taken by defendant and $11,600 for the costs of a special audit conducted by the county. Finally, the judgment promised that for every $20,000 (up to $60,000) paid in restitution within thirty days, defendant's term of imprisonment would be reduced by four years. Implicit in this provision is that any sum paid would reduce the $62,319.20 owed as restitution as a condition of parole.

Defendant raises the following contentions: (1) because the crime of making a false public voucher, NMSA 1978, Section 30–23–3 (Repl.Pamp.1984) is a special case of the general crime of fraud, NMSA 1978, Section 30–16–6 (Cum.Supp.1989), defendant could not be prosecuted or sentenced on the fraud charges; (2) to prevent double punishment for the same conduct, the merger doctrine requires that the sentence on each false-voucher count run concurrently with the sentence on the corresponding fraud count; (3) the aggravating circumstances found by the district court could not properly be considered as grounds for enhancement of the sentences of imprisonment for fraud; (4) the district court violated due process by enhancing the fraud sentences without prior notice to defendant of what the aggravating circumstances would be; (5) the district court lacked authority to order defendant to turn over the money in the bank account; (6) the district court lacked authority to condition a reduction of defendant's prison sentence on defendant's payment of restitution within thirty days of his original sentencing; (7) defendant was denied due process because his sentence of imprisonment in excess of eight years on the fraud charges resulted from his financial inability to pay restitution within thirty days; (8) the district

court lacked authority to include the cost of the county audit in the order of restitution; and (9) if resentencing is required, it should be assigned to a different judge. We deny defendant's request in his reply brief to add an additional issue.

We vacate defendant's sentence and remand for a new sentence because of the impropriety of the sentencing provisions relating to payment of restitution within thirty days, and because of the apparent impropriety of consideration of one of the aggravating circumstances relied upon to enhance defendant's sentence. We leave to the sound discretion of the district judge whether he should proceed to reimpose sentence or recuse himself.

1. *Is the False–Voucher Statute a Special Case of the Fraud Statute?*

■ Defendant contends that he could not be prosecuted or sentenced on the fraud charges, which are third-degree felonies, because the false-voucher statute, which defines a fourth-degree felony, is a specific statute that prevails over the general fraud statute. Although *State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981) ruled that the state could proceed to try the defendant on both fraud and false-voucher charges, the supreme court did not specifically address the argument made by defendant here. In any event, defendant's argument fails.

As we recently stated in *City of Farmington v. Wilkins*, 106 N.M. 188, 189, 740 P.2d 1172, 1173 (Ct.App.1987), a specific statute prevails over a general one only if the two statutes condemn the same offense *and* require the same proof. For example, in the leading case of *State v. Blevins*, 40 N.M. 367, 60 P.2d 208 (1936), the defendant was convicted of illegally selling cattle. He was charged under a general statute prohibiting the sale of any property without the right to do so. The supreme court held that the defendant should have been charged under a specific statute regulating the theft, embezzlement, or improper sale of cattle and other animals. Similarly, in *State v. Riley*, 82 N.M. 235, 478 P.2d 563 (Ct.App.1970), we held that the defendant

was required to be prosecuted under a statute specifically relating to marijuana, rather than one that applied to any narcotic drug.

This case is distinguishable from *Blevins* and *Riley*. The false-voucher statute, Section 30–23–3, defines the crime as follows:

Making or permitting false public voucher consists of knowingly, intentionally or willfully making, causing to be made or permitting to be made, a false material statement or forged signature upon any public voucher, or invoice supporting a public voucher, with intent that the voucher or invoice shall be relied upon for the expenditure of public money.

Section 30–16–6 defines fraud:

Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations.

Thus, the fraud statute does not require the making of a false voucher; and the false-voucher statute does not require the misappropriation or taking of anything of value. Moreover, fraud, unlike the crime of making false public vouchers, requires proof of the victim's reliance. *See* SCRA 1986, 14–1640 (uniform jury instruction for fraud); *State v. Higgins*, 107 N.M. 617, 762 P.2d 904 (Ct.App.1988) (Worthless Check Act not special case of crime of fraud). The conduct condemned by the false-voucher statute is not just a subspecies of fraud. Indeed, conduct prohibited by the false-voucher statute may not even be part of a course of conduct prohibited by the fraud statute. Therefore, we hold that defendant could be prosecuted and sentenced for violation of both statutes.

### 2. *Merger*

Even though defendant may be prosecuted on both a fraud count and the corresponding false-voucher count, consecutive sentences on the two counts may not be permissible. If the legislature intended to prohibit multiple punishment for violation of the two statutory provisions, then the sentences on a count of fraud and the corresponding false-voucher count must merge, i.e., run concurrently. *See State v. Ellenberger; State v. Tsethlikai*, 109 N.M. 371, 785 P.2d 282 (Ct.App.1989). In that event, defendant's sentence might require modification. Although the district court ordered the sentences on the false-voucher counts to run concurrently with the sentences on the fraud counts, the judgment provides that a five-year period of probation on the false-voucher counts should commence upon defendant's release from incarceration, thereby extending the sentence beyond that imposed for the fraud counts.

Nevertheless, the issue may be mooted because, for reasons stated in later sections of this opinion, we are remanding for resentencing. If, upon resentencing, defendant's sentence on the false-voucher counts does not in any way increase the penalty imposed upon him on the fraud counts (a result that may be compelled by the plea bargain), then defendant's claim of merger becomes moot. *See State v. Ellenberger.* Because of this potential mootness, we do not reach the merger issue on this appeal.

### 3. *Aggravating Circumstances*

The sentencing court may increase the basic sentence for noncapital felonies by up to one-third of the basic sentence if the court finds "aggravating circumstances." NMSA 1978, § 31–18–15.1 (Repl.Pamp. 1987). The statute does not provide guidance concerning what such circumstances might be. Our supreme court has stated that *some* of the factors that the sentencing court *may* consider and weigh in mitigation or aggravation of the sentence are: "unusual aspects of the defendant's character, past conduct, age, health, any events surrounding the crime, pattern of conduct indicating whether he or she is a serious threat to society, and the possibility of rehabilitation." *State v. Segotta*, 100 N.M. 498, 501, 672 P.2d 1129, 1132 (1983).

The aggravating circumstances recited in the judgment were:

[T]here being a series of thefts over a period of time showing a continuing intent to steal; that the money is apparent-

ly gone or has been spent; the Defendant was in a position of public trust at the time of the thefts; and the Defendant has made false statements that another person was receiving a substantial amount of money.

■ The continuing nature of defendant's defalcations was an appropriate aggravating circumstance. Defendant argues that this circumstance was contained in the elements of the offenses and it is inappropriate for an element of an offense to serve double duty as an aggravating circumstance. We disagree with defendant's view of the elements of the offenses. Repetitive criminal conduct was not an element of any of the offenses charged. Each of the fraud counts could have been established individually without proof that defendant engaged in repeated criminal conduct. *Segotta* specifically permits consideration of defendant's "pattern of conduct." Defendant's pattern of conduct was an appropriate consideration in this case.

■ Another appropriate aggravating circumstance was defendant's position of public trust. Defendant contends that his public position was already the basis for his punishment on the false-voucher counts, because an element of those offenses is that the defendant be a public employee or official. The enhancement of defendant's sentence, however, was on the fraud charges, not the false-voucher charges. Moreover, even if defendant's being a public official were an element of the fraud charge, the district court can appropriately consider defendant's specific office. The degree of public trust with which a public official or employee is charged depends on the specific position occupied by the official or employee. Defendant was the highest ranking county employee. Betrayal of the high fiduciary duty which he owed to the people of his county was a proper matter for consideration by the district court.

■ The district court could also properly consider as an aggravating circumstance defendant's attempt to escape punishment by blaming another person. In conversations with an investigator from the district attorney's office who was inquiring about the money, defendant initially placed the blame on another individual, who he claimed had been a partner in the computer company. Defendant relies on decisions holding that the district court cannot enhance a sentence because of a defendant's failure to cooperate with the government or invocation of the privilege against self-incrimination. *See United States v. Heubel*, 864 F.2d 1104 (3d Cir.1989); *DiGiovanni v. United States*, 596 F.2d 74 (2d Cir. 1979). *Cf. State v. James*, 109 N.M. 278, 784 P.2d 1021 (Ct.App.1989) (establishing restrictions on enhancing sentence because of defendant's false denials at trial). Defendant was not, however, being punished for remaining silent or failing to cooperate. The enhancement was based on evidence of defendant's poor character, his attempt to escape responsibility by accusing someone else of the crime. Because such evidence is probative of defendant's prospects for rehabilitation, *cf. State v. James* (lying may be probative of diminished prospects for rehabilitation), it is a proper aggravating circumstance.

■ In contrast to the first three aggravating circumstances, the reasoning behind the fourth one eludes us. That circumstance was "that the money is apparently gone or has been spent." The use to which a criminal has placed his ill-gotten gains may be an appropriate consideration in aggravation or mitigation of sentence. Did defendant use the money to pay for needed medical expenses or to go on a gambling junket? Yet in itself the mere disappearance of the ill-gotten gains would be a neutral matter. Perhaps the language in the judgment was shorthand for a factor that we do not perceive. Unless, however, that factor is spelled out at resentencing, the district court should not consider the absence of the money acquired by defendant as an aggravating circumstance. Because we are requiring resentencing on other grounds as well, we need not consider whether ordinarily we would remand for resentencing solely because of improper consideration of one allegedly aggravating circumstance when other appropriate aggravating circumstances would suffice to

justify enhancement. *Cf. Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (affirming state court decision upholding death sentence after finding the evidence insufficient to support one of the two aggravating circumstances relied on by the sentencing judge).

### 4. *Notice Prior to Allocution of Basis for Enhancement of Sentence*

 Although defendant acknowledges that he and his counsel were permitted to address the court before sentence was pronounced, he contends that "this right of allocution was rendered meaningless by the fact that the defendant received no notice of the court's intention to enhance his sentence for reasons outside the record." Defendant complains that the presentence report did not imply that enhancement was appropriate and that the district court did not provide notice of its intention to enhance.

Defendant cites no authority requiring such notice. Nor does he point to any facts relied upon by the district court that he had no opportunity to rebut. The record shows that he had an opportunity to rebut the aggravating circumstances. At the sentencing hearing the prosecutor, in requesting a sentence of incarceration, referred to all the matters that the district court could appropriately consider in enhancing defendant's sentence. Moreover, the presentence report apparently referred to all the pertinent information. Because defendant does not claim a violation of SCRA 1986, 5–703(B), which requires that the report be available for inspection by defendant and his counsel at least two working days before the sentencing hearing, we infer that prior to imposition of sentence, defendant had an opportunity to address any factual errors with respect to the aggravating circumstances and could have argued how the facts should affect his sentence. Indeed, at the sentencing hearing defense counsel addressed the matter of aggravating circumstances, but only to assert that there were none. We find no lack of notice to defendant as to what issues, including aggravating circumstances, he needed to address with respect to his sentence.

In any case, defendant now has adequate notice to address aggravating circumstances at the time of the resentencing ordered by this court.

### 5. *The Order to Defendant to Pay the County the Funds Remaining in the National Computer Systems Account*

 The judgment and sentence orders "that Defendant turn over to Curry County any monies in the bank account of National Computer Systems at the Sunwest Bank of Clovis[.]" Defendant contends that this provision is null and void, as an indeterminate fine based upon the wealth of defendant. This argument ignores the circumstances. The funds in the account were proceeds of defendant's fraud. Payment of the precise amount in the account was considered in computing the restitution required of defendant. (The $50,719.20 ordered as restitution for funds taken by defendant equals the $55,848 deposited to the National Computer Systems account, less (1) the $2,366.92 remaining in the account and (2) the $2,761.88 value of the one computer purchased by defendant and delivered to the county.) When it was noted at the sentencing hearing that the district court may not have the authority to order the bank to turn over the money to the county, defense counsel agreed to an order requiring defendant to write a check on the account, paying the balance in the account to the county. The district court's order was an appropriate method of compelling partial restitution by defendant.

### 6. & 7. *The Provision for Reduction of Defendant's Period of Incarceration if Restitution is Made Within Thirty Days*

 The district court's sentence included the following provision:

IT IS FURTHER ORDERED that within the next thirty (30) days the sentence imposed herein in Counts I through V may be modified as follows: for each $20,000.00 in restitution paid by the Defendant, one four year imprisonment period shall run concurrent in Counts I

through V. Defendant will only be eligible to run three of the counts concurrent.

Defendant contends that the legislature has not authorized such a provision and due process forbids it. We consider the two issues together, ultimately deciding that the provision was not authorized by statute, because the district court did not follow the mandate of NMSA 1978, Section 31–17–1 (Repl.Pamp.1987) to determine whether defendant had the ability to pay the restitution within thirty days.

We have recently upheld the authority of a sentencing judge to offer the defendant a reduction in sentence in return for performing certain tasks within the thirty-day period during which the district court can reconsider sentence. *State v. Callaway*, 109 N.M. 564, 787 P.2d 1247 (Ct.App.1989) (trial court offered to cut defendant's sentence in half if he provided information pertaining to the third individual involved in the offense), *rev'd on other grounds*, 109 N.M. 416, 785 P.2d 1035 (1990); *see* SCRA 1986, 5–801(A) (sentence may be modified within thirty days of imposition). Concerns of constitutional dimension arise, however, when the terms of a sentence depend upon performance of an act by the defendant and the defendant is unable, through no fault of his own, to perform the act, particularly when the act is the payment of money.

In *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) the defendant received the maximum sentence of a one-year incarceration and a $500 fine. Because the defendant could not pay the fine at the conclusion of his year of incarceration, he was required by state law to "work off" the fine by incarceration for another one hundred days at $5 a day. In *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971) the defendant was fined $425 pursuant to a criminal statute that did not provide for incarceration as a penalty. Yet because the defendant could not pay the fine, he had to serve time at $5 a day, pursuant to a state law. In both cases the United States Supreme Court held that the imprisonment violated the constitutional right to equal protection of the laws. As the Court later explained, "The rule of

*Williams* and *Tate*, then, is that the State cannot ' "impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." ' " *Bearden v. Georgia*, 461 U.S. 660, 667, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221 (1983) (quoting *Tate v. Short*, 401 U.S. at 398, 91 S.Ct. at 670 (quoting *Morris v. Schoonfield*, 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970))).

In *Bearden* the defendant had been placed on probation. The conditions of probation included payment of a $500 fine and $250 restitution. The defendant paid only $200. The trial court therefore revoked the defendant's probation and ordered him incarcerated. The Supreme Court held that the incarceration violated the fundamental fairness ensured by the Equal Protection and Due Process Clauses of the United States Constitution. The Supreme Court said, "[T]he trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist." *Id.* at 661–62, 103 S.Ct. at 2067. *Accord State v. Parsons*, 104 N.M. 123, 717 P.2d 99 (Ct.App.1986).

The limits on imposing imprisonment for failure to pay a fine or restitution are still undecided. For example, the United States Supreme Court has not ruled on the constitutionality of alternative sentences that impose a fine or incarceration, such as the classical "$30 or thirty days." Yet such sentences do raise constitutional questions, *see* III A.B.A. Standards for Criminal Justice, Sentencing Alternatives and Procedures, at 18–156 (2d ed.1980); and the A.B.A. Commission on Criminal Justice Standards has recommended against permitting such sentences. *See id.*, Standard 18–2.7(e).

It may be tempting to generalize by pronouncing it unconstitutional to sentence a defendant to jail "just because he is poor." The issue, however, is more subtle than may appear at first. A proper purpose of a

sentence is to punish the criminal. That punitive purpose may be adequately served by imposition of a fine. Yet what if there is no prospect of a defendant's being able to pay a fine? Is imprisonment as punishment then impermissible? In other words, if two people commit the same crime and are equally culpable, does the Constitution permit the sentencing court to impose a fine on the one who is capable of paying the fine while imprisoning the one who cannot? The Supreme Court has not yet addressed that specific issue. *See Bearden v. Georgia*, 461 U.S. at 675–76, 103 S.Ct. at 2074 (White, J., concurring).

Despite the uncertainty concerning the precise restrictions imposed by due process and equal protection in this area, the Supreme Court's decisions undoubtedly require careful scrutiny of a sentence whose effect may be to incarcerate a defendant for failure to pay money without regard to whether the defendant's failure to pay is through no fault of his own. This observation affects our interpretation of the relevant New Mexico statute in two ways. First, courts interpret statutes so as to avoid constitutional questions, so long as such avoidance does not do violence to the statutory language and scheme. *See Huey v. Lente*, 85 N.M. 597, 514 P.2d 1093 (1973). Second, we can assume that the values embedded in constitutional due process and equal protection, which form the basis for the United States Supreme Court's decisions, have guided the legislature's intent in enacting New Mexico sentencing statutes. Thus, we examine New Mexico statutory law regarding restitution under the assumption that it attempts to avoid the incarceration of a convicted person solely because of his faultless inability to pay restitution.

█ We now turn to the language of the pertinent New Mexico statute. Section 31–17–1(A) states:

A. It is the policy of this state that restitution be made by each violator of the Criminal Code of New Mexico to the victims of his criminal activities to the extent that the defendant is reasonably able to do so. This section shall be inter-

preted and administered to effectuate this policy. As used in this section unless the context otherwise requires:

(1) "victim" means any person who has suffered actual damages as a result of the defendant's criminal activities;

(2) "actual damages" means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish and loss of consortium. Without limitation, actual damages includes damages for wrongful death;

(3) "criminal activities" includes any crime for which there is a plea of guilty or verdict of guilty, upon which a judgment may be rendered and any other crime committed after July 1, 1977 which is admitted or not contested by the defendant; and

(4) "restitution" means full or partial payment of actual damages to a victim.

Paragraph B requires that restitution be imposed as a condition of probation or parole whenever the sentencing court defers or suspends a sentence. That provision, however, is not exclusive. Restitution may be required in the absence of any deferment or suspension. *See State v. Gross*, 98 N.M. 309, 648 P.2d 348 (Ct.App.1982). Indeed, the state policy expressed in the first sentence of Paragraph A requires *each* violator to make restitution. *See id.* To effectuate this policy, district courts should have authority to include in a sentence a provision for prompt payment of full or partial restitution, without having to await commencement of probation or parole. A victim whose restitution is delayed for years may not be truly compensated, even if paid "in full." Willful refusal to pay restitution promptly is an appropriate factor for the sentencing court to consider during the thirty-day period in which it may modify sentence. *See* R. 5–801.

Paragraph A does not, however, provide an unlimited power to make restitution a condition of a sentence. The state policy expressed in Paragraph A is that each convicted defendant pay restitution "to the

extent that the defendant is reasonably able to do so." We construe that language to require the district court to determine the defendant's capacity to pay *before* imposing a deadline for payment. Such a construction of the statutory language comports with Paragraphs B, C, and D of Section 31–17–1, which provide that when restitution is imposed as a condition of probation or parole the defendant and the state are to prepare a payment plan that takes into account such factors as defendant's employment and financial condition. That construction also protects against incarceration resulting from faultless inability to pay, a result that could well violate constitutional rights to due process and equal protection, as explained above. *Cf. State v. Lack*, 98 N.M. 500, 507, 650 P.2d 22, 29 (Ct.App.1982) (suggesting that provisions of Section 31–17–1 are required to satisfy due process). To be sure, in the absence of a statutory requirement that the court consider the defendant's financial wherewithal before imposing restitution, a defendant could still raise constitutional arguments to challenge any imprisonment resulting from faultless failure to pay. But just as surely, the legislature could try to *prevent* such imprisonment by avoiding the imposition of restitution requirements that are incapable of fulfillment. We believe it did so in Section 31–17–1.

Here the record does not support a finding that defendant possessed sufficient assets to make restitution within thirty days. The funds fraudulently taken by defendant were not traced. The district court had appointed the public defender to represent defendant after a finding of indigency. At the sentencing hearing the trial judge stated that he did not know if defendant had any funds remaining. One purpose of the restitution requirement was apparently to find out whether defendant had the money secreted somewhere. Still, the district court's order regarding payment of restitution within thirty days was not a proper method for achieving the district court's legitimate objective of determining whether the fraudulently obtained funds were recoverable. If the district court wished to give defendant an incentive to cooperate with the state in tracing the funds, it could have indicated that it would consider a reduced sentence if defendant so cooperated. *See State v. Callaway.* To impose restitution, however, the district court needed to comply with statutory requirements.

We therefore remand to the district court for resentencing. We do not hold that the thirty-day restitution provision is per se invalid. We merely require the district court to consider defendant's ability to pay restitution within thirty days before conditioning a portion of his term of imprisonment on payment of restitution within that time frame. In determining how much defendant can pay, the district court may consider how much of defendant's ill-gotten gains remain unaccounted for—but only after defendant has an opportunity to account for them. Once the district court settles on an appropriate restitution requirement, that court can then consider what term of imprisonment and other conditions best satisfy the retributive, punitive, deterrent, and rehabilitative purposes of the penal law.

8. *Restitution for Expense of County's Audit*

■ The restitution statute defines "restitution" as "full or partial payment of actual damages to a victim." § 31–17–1(A)(4). Actual damages are pecuniary damages, other than punitive damages, that could be recovered by the victim in a civil action against the defendant. § 31–17–1(A)(2). In assessing restitution the district court included the expense to the county of conducting an audit. Defendant argues that this expense was not "actual damage" suffered by the county as a result of defendant's crimes and therefore could not be considered in ordering restitution. Because this issue may arise on remand, we consider it.

Defendant claims that the audit was solely to identify weaknesses in the county's accounting system. We do not consider that claim, however, because it was not made in the district court. Defendant's only objections below to including the audit expense in the amount of restitution were: the audit did not produce any further evi-

dence of improper acts on the part of defendant, the audit was not directly related to the charges brought against defendant, and the county's decision to have the audit was based on its concern that "there might be something else." Even assuming the accuracy of defendant's contentions, the audit was an appropriate element of restitution. A reasonably foreseeable consequence of defendant's fraudulent taking of money from the county was that the county would need to conduct a thorough audit to be sure that it had uncovered all of defendant's defalcations. The expense of that audit is a direct consequence of defendant's criminal acts. Although we have found no civil case directly in point, permitting recovery for the audit in a civil action would follow from the general principle that the victim of a conversion can recover "the amount of any further pecuniary loss of which the deprivation has been a legal cause[.]" 4 Restatement (Second) of Torts § 927(2)(b) (1979). *See* 18 Am.Jur.2d *Conversion* § 117, at 231 (1985). The recovery would be similar to that afforded for expenses incurred in pursuing converted goods. *See* D. Dobbs, *Law of Remedies* § 5.14, at 410–11 (1973); *Fulks v. Fulks*, 95 Ohio App. 515, 121 N.E.2d 180 (1953) (attorney fees required to repossess stolen steer from innocent purchaser); *Clifton v. Jones*, 634 S.W.2d 883 (Tex.Ct.App.1982) (expense of trip to recover airplane). Indeed, at least one court has indicated that such "pursuit expenses" include accounting services to trace and identify converted property. *See Security–First Nat'l Bank of Los Angeles v. Lutz*, 322 F.2d 348, 352 (9th Cir.1963). So long as the audit is a reasonable attempt to determine the nature and extent of losses caused by the wrongdoer, rather than an expense of trial preparation, *see id.*, the "success" of the audit in discovering additional losses is immaterial. The district court acted properly in including the expense of the audit as "actual damages" to be considered in ordering restitution.

### 9. *Reassignment to New Judge for Sentencing*

■ Defendant contends that if he is resentenced, the case should be assigned to another judge. Defendant asks us to adopt the test from *United States v. Robin*, 553 F.2d 8, 10 (2d Cir.1977) (In Bank) for deciding when reassignment is appropriate:

(1) [W]hether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

Without deciding whether we would embrace that test, we conclude that the criteria mentioned do not require reassignment in this case. At the sentencing hearing the trial judge expressed considerable reluctance and distaste for imposing a harsh sentence on defendant. Nothing in the record suggests any personal animosity of the trial judge toward defendant. The district court's remarks suggest just the opposite. In addition, we do not believe that the prior imposition of sentence by the trial judge would necessarily so burden the judge's reconsideration of sentence that he could not follow the directives of this court or treat defendant fairly. *See United States v. Heubel.* Therefore, we leave to the sound discretion of the trial judge whether to resentence defendant or to recuse himself so that another judge can impose sentence.

### 10. *Conclusion*

We vacate defendant's sentence and remand for resentencing in conformity with this opinion.

IT IS SO ORDERED.

BIVINS, C.J., and MINZNER, J., concur.