839 P.2d 434

**STATE of Arizona, Appellee,**

v.

**Clay Earl MORRIS, Appellant.**

**No. 1 CA–CR 90–1472.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 18, 1992.

Review Denied Nov. 17, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Alex D. Gonzalez, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GRANT, Presiding Judge.

Defendant Clay Earl Morris ("Morris") appeals the trial court's order that he pay $2700 restitution in connection with his sentences on two counts of endangerment.

## FACTS

The facts were established and admitted by the defendant at the change of plea hearing as follows. Morris's indictment and subsequent conviction arose from a series of events which occurred in Mesa, Arizona on November 10, 1989. Morris was driving while under the influence of cocaine. His car struck a jeep towed behind a mobile home driven by John Sowa ("Sowa"). Moments later, in fleeing the accidents, Morris nearly struck two pedestrians.

Morris was originally charged with two counts of endangerment, class 6 felonies, and one count of driving under the influence of an intoxicating drug with a suspended, canceled, revoked or refused license, a class 5 felony. After the latter charge was dismissed with prejudice, Morris pled guilty to the two endangerment counts. As part of the plea agreement,

Morris agreed to pay Sowa restitution "not to exceed $3500."

The trial court judge sentenced Morris to three years probation. As terms of probation, the court ordered Morris to pay $1450 in restitution to Sowa personally and $1250 in restitution to Alberta Motor Association ("AMA"), Sowa's insurance carrier.

## DISCUSSION

Our discussion of the restitution ordered in this case is controlled by statute. Specifically, Ariz.Rev.Stat.Ann. ("A.R.S.") section 13–603(C) states in relevant part:

If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died, in the full amount of the economic loss as determined by the court. . . .

"Economic loss" is defined at A.R.S. section 13–105(11):

"Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

Morris challenges the restitution order on two grounds:

1. The trial court improperly ordered Morris to pay restitution to AMA.

2. The court improperly ordered Morris to pay restitution to Sowa for expenses incurred while Sowa's car was being repaired.

A. *Restitution to the Insurance Company*

■ As to Morris's first argument regarding payment of restitution to the insurance carrier, we find that the trial judge properly ordered restitution payable to AMA. This court addressed similar issues in *State v. Merrill*, 136 Ariz. 300, 665 P.2d 1022 (App.1983).

The defendant in *Merrill* argued that an insurance company was not a "victim" within the meaning of Arizona's restitution statutes, and that restitution is only properly payable to the direct victims of crimes. *Id.* at 301, 665 P.2d at 1023. We rejected both arguments, holding that the legislative requirement of full restitution and the policy underlying mandatory restitution "is best fulfilled if 'victim' includes the entity suffering the economic loss resulting from appellant's criminal activity." *Id.* The court also stated: "Using [defendant's] interpretation, a trial judge could find that the immediate victim of the crime, fully reimbursed by an insurance carrier, has not suffered any economic loss, thus precluding any order of restitution. We do not believe that the legislature intended such a result." *Id.*

Morris contends that his plea agreement shows that he only agreed to pay restitution to Sowa, and therefore he cannot be ordered to pay restitution to any other party. Morris's argument mirrors the "direct victim" argument advanced in *Merrill*, although cast in a somewhat different light. We remain unpersuaded. The insurance company indemnifying Sowa for losses as a result of Morris's criminal conduct is in the same position of economic loss as Sowa. To hold that restitution should only be paid to Sowa would require payment of the total losses to Sowa, necessitating a subrogation action between the insurance company and Sowa. The restitution statutes do not give any indication that such a result is appropriate. In fact, the statutory scheme calls for restitution to "any party who suffered an economic loss as caused by the defendant's conduct." A.R.S. § 13–804(A). The trial court properly ordered restitution payable to AMA.

B. *Restitution for Other Expenses*

Morris next contends that expenses incurred by Sowa when the jeep was being repaired are "consequential damages" that cannot be the subject of a restitution order. *See* A.R.S. § 13–105(11). These expenses included expenditures for taxi fares, car

rental and phone calls relating to these matters.

■ The restitution statutes, read together, indicate a legislative intent to impose mandatory restitution, while limiting the types of losses for which a defendant can be ordered to pay. Our task, then, for purposes of the present case, is to clarify "economic losses" that may be the subject of restitution, as opposed to "consequential damages" which may not.

■ "Consequential damages" is a term of art which the legislature obviously intended to transplant from civil law into the criminal restitution context. Therefore, in attempting to define "consequential damages" as that term is used in A.R.S. section 13–105(11), we borrow definitions from the civil arena.[1]

Consequential damages have been defined as follows:

> Consequential damages are such as are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the action of the party, but only from the consequences or results of such act. The term may include damage which is so remote as not to be actionable.

25 C.J.S., *Damages*, § 2 at 617. This court has expressly adopted this definition of consequential damages for purposes of restitution by stating that a defendant cannot be ordered to pay for losses that "do not flow" directly from the criminal activity. *State v. Wideman*, 165 Ariz. 364, 368–369, 798 P.2d 1373, 1377–1378 (App.1990); *State v. Pearce*, 156 Ariz. 287, 289, 751 P.2d 603, 605 (App.1988).

■ Consequential damages are often contrasted with "actual damages," defined as "damages in satisfaction of, or in recompense for, loss or injury sustained; such compensation or damages for an injury as

follow from the nature and character of the act, and will put the injured party in the position which he was in before he was injured." 25 C.J.S., *Damages* § 2 at 615; *Arizona Copper Co., Ltd. v. Burciaga*, 20 Ariz. 85, 177 P. 29 (1918); *State v. Griswold*, 8 Ariz.App. 361, 364, 446 P.2d 467, 470 (1968). Also see *U.S. Fidelity & Guaranty Co. v. Davis*, 3 Ariz.App. 259, 263, 413 P.2d 590, 594 (1966), quoting C.J.S. with approval.

"Economic loss" as defined at A.R.S. section 13–105(11), and as used in A.R.S. section 13–603(C), is the functional equivalent of "actual damages" as the latter term has previously been characterized in our appellate decisions. Pursuant to the definitions quoted above, the determination that losses are actual losses rather than consequential damages will rest on a causal connection between the criminal conduct and the claimed loss. Our restitution statute directs the court to utilize a "but for" analysis when ordering restitution. A.R.S. § 13–105(11). We have previously couched this analysis in terms of "direct result." *Wideman*, 165 Ariz. at 369, 798 P.2d at 1378.

The courts of several other states, construing restitution statutes similar or identical to our own, have acknowledged that a causal connection is critical in assessing damages subject to a restitution order. *See, e.g., State v. Holmberg*, 449 N.W.2d 376 (Iowa 1989); *State v. Stratton*, 99 Or. App. 538, 783 P.2d 41 (1989); *People v. Engel*, 746 P.2d 60 (Colo.App.1987); *In re Maxwell C.*, 159 Cal.App.3d 263, 205 Cal. Rptr. 310 (2 Dist.1984). A review of the various decisions shows that the courts usually arrive at the "direct result" determination by employing a "foreseeability" or "natural consequence" analysis similar to the causation determination in civil cases.

---

1. In referring to civil law concepts, we do not mean to suggest that restitution should take the place of civil damages awarded in an appropriate civil action.

  "Because of the nature of restitution, the statutory scheme presents a peculiar blend of

both civil and criminal law concepts, but it is not a form of civil liability and recovery." *State v. Dillon*, 292 Or. 172, 637 P.2d 602, 606 (1981).

For example, in *State v. O'Brien*, 459 N.W.2d 131 (Minn.App.1990), the court construed a restitution statute that, like Arizona's, allows restitution for "economic losses." The case provides a prime example of the causal connection analysis. The defendant was married in 1983 and never divorced. In 1988 he again married, after completing a marriage application on which he swore that his prior marriage had been annulled. The defendant was eventually convicted of perjury or false swearing. The court ordered restitution to the defendant's new bride, the victim of the false swearing. On appeal, the defendant alleged several errors in the order, including expenses for repair of a ring defendant gave the victim. The appellate court upheld the order. Regarding the repair of the ring, the court said that "[b]ut for the perjury, there would have been no ceremony and but for the ceremony the ring would not have needed repair." *Id.* at 134–135. The court also upheld restitution for the wedding itself, including expenses for flowers, invitations, clothes, shoes, music, a cake, reception hall rental, and gifts for attendants, holding that all of these expenses were a direct result of the defendant's illegal conduct. *Id.* at 135.

In *State v. Steward*, 52 Wash.App. 413, 760 P.2d 939 (1988), the court used the concept of "foreseeability" to find that losses were the direct result of the defendant's activities. The defendant took the car of a friend without permission. She abandoned the car in a nearby town, leaving the keys in the car. The car was later stripped, and personal items were stolen from inside the car. The defendant objected to the restitution order contending that she did not damage the car nor steal the missing personal property. The court of appeals affirmed the trial court's holding that "it was foreseeable and likely to a reasonable person that the car would be subject to stripping and theft of the contents of the car." *Id.*, 760 P.2d at 940. Also see *State v. Blair*, 56 Wash.App. 209, 783 P.2d 102 (1989), where the same court upheld a similar restitution order based on nearly identical facts.

"Foreseeability" was also the operative holding in *State v. Whitaker*, 110 N.M. 486, 797 P.2d 275 (App.1990). The defendant was convicted of embezzling several thousand dollars from the county government, where he worked. The trial court ordered restitution for the costs of a special audit performed by the county. The defendant objected, arguing that the audit was not directly related to the charges brought against him but based on the county's concerns that there might be other improper acts. The court upheld the restitution order: "A reasonably foreseeable consequence of defendant's fraudulent taking of money from the county was that the county would need to conduct a thorough audit to be sure that it had uncovered all of defendant's defalcations. The expense of that audit is a direct consequence of defendant's criminal acts." *Id.*, 797 P.2d at 284.

The nature and character of the criminal activity may also be a factor in assessing restitution. Thus in *People v. Flanagan*, 133 Ill.App.3d 1, 88 Ill.Dec. 351, 478 N.E.2d 666 (4 Dist.1985), the court held that restitution was proper where the losses were the "natural consequence" of the defendant's conduct.

We hold that our restitution statutes contemplate a requisite causal connection between the "economic loss" suffered by the victim and the defendant's conduct. We reaffirm our previous holding that restitution is proper when the victim's losses are a direct result of the defendant's conduct, but not if the loss or damage does not flow from the conduct. We also find that the nature and character of the criminal activity may be additional factors in assessing restitution. Thus, we further hold that restitution should be ordered for actual damages, that are the natural consequences of the defendant's conduct or when the court determines that the losses were foreseeable, considering the nature and character of defendant's criminal actions.

Applying this analysis to the present case, we find that the defendant's conduct directly led to Sowa's expenses for rental cars, taxi fares and related phone

calls to the Canadian insurance company and others. These expenses would not have been incurred but for Morris's act of driving under the influence of an intoxicating drug, which resulted in the immediate and direct damage to Sowa's jeep. The losses claimed by Sowa were the natural consequence of the original damage to the jeep.

We note that, as our restitution decisions have evolved, we have recognized specific types of damages that will normally be appropriate for restitution, in addition to the types of damages expressly allowed by A.R.S. section 13–105(11). Our decision today lends support to the notion that certain categories of losses will nearly always require restitution to victims. For example, restitution orders have been upheld for medical expenses of the victim, *State v. Phillips*, 152 Ariz. 533, 733 P.2d 1116 (1987), including mental health counseling following a crime. *State v. Wideman*, 165 Ariz. 364, 369, 798 P.2d 1373, 1378 (App. 1990). We have also held that expenses incurred by a victim to restore mental well-being and physical safety are appropriate items for restitution. *State v. Brady*, 169 Ariz. 447, 819 P.2d 1033 (App.1991) (moving expenses for sexual assault victim). Today we hold that basic "necessities of life," such as transportation, are also legitimate items for restitution. We can conceive of other situations where the victim is deprived of the basic necessities of everyday life, such as shelter, food, medical care, and we hold that restitution in these cases should be the rule, not the exception.

We do not say that a categorical approach is the best means of assessing restitution orders in all cases, but we believe that this approach will alleviate disputes arising in a vast majority of restitution hearings.

## CONCLUSION

The trial court properly ordered restitution to be paid to AMA, Sowa's insurance carrier. Restitution was also proper for the several expenses Sowa claimed he in-

curred as a result of Morris's conduct. The restitution order is therefore affirmed.

EUBANK and KLEINSCHMIDT, JJ., concur.