**STATE of Iowa, Appellee,**

v.

**Edward J. HOLLINRAKE, Appellant.**

**No. 99–637.**

Court of Appeals of Iowa.

Jan. 12, 2000.

John A. Pabst, Albia, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, William S. Owens, County Attorney, and Harold Young, Special Assistant Attorney General, for appellee.

Heard by STREIT, P.J., VAITHESWARAN, J., and HAYDEN,* S.J.

STREIT, P.J.

"Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." *Olmstead v. United States,* 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944, 960 (1928) (Brandeis, J., dissenting). Sheriff Edward Hollinrake became a law unto himself, as Justice Brandeis feared, when he falsified public documents in order to obtain money for unauthorized purposes. After his guilty plea, the court ordered Hollinrake to pay restitution which included the costs of an audit of the sheriff's records. The audit was necessary to verify the extent of Hollinrake's misdeeds and restore public confidence. Hollinrake appeals this order. Because we find the county could recover the cost of the audit under a civil-based theory of recovery, the plan was appropriate, and we affirm.

---

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1999).

## I. Background Facts and Proceedings.

According to Edward Hollinrake, the Monroe County Sheriff, the county board of supervisors denied him the funds needed to eradicate the influx of drugs into Monroe County. Claiming a higher call of justice, Hollinrake improperly sold a department firearm for $450 and issued a $420 false receipt for tires on one of the department's patrol cars to finance his alleged crusade. After admitting his misdeeds, the State charged him with falsifying a public document. Hollinrake's admissions shook the fiscal integrity of the sheriff's department. To alleviate fears that Hollinrake's mismanagement of county funds was not limited to the two admitted instances, the county ordered an independent audit of the sheriff's department. The audit did not unearth any other major discrepancies, thus restoring the public's confidence.

Hollinrake pled guilty to falsifying a public document and agreed to resign from his position and make restitution to Monroe County in the amount of $870. At sentencing the State requested Hollinrake pay an additional $4,085.23 in restitution, the cost of the special audit. The State argued the cost of the audit constituted additional pecuniary loss and was therefore recoverable under the restitution statute. The district court accepted Hollinrake's plea, suspended his sentence, and ordered restitution in the amount of $4,975.33.

Hollinrake appeals, claiming restitution for an audit may only be ordered in theft cases and there was no causal nexus between his acts and the audit.

## II. Standard of Review.

■ We review restitution orders for errors of law. *State v. Watts,* 587 N.W.2d 750, 751 (Iowa 1998).

## III. The Merits.

■ Iowa Code sections 910.1 and 910.2 (1997) require offenders to compensate their victims for all pecuniary damages suffered as a result of the offenders' criminal activity. Pecuniary damages are

> all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or events, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

*Id.* § 910.1(3). Hollinrake claims the trial court erred in ordering his restitution plan include the cost of the audit because falsifying a public document has no civil equivalent, thus removing the costs associated with the audit from the purview of section 910.1(3). Section 910.1(3), however, does not mandate the crime committed specifically equate to a recognized civil action. Rather, the statute permits the restitution plan to include pecuniary damages if the victim could recover against the offender under any civil-based theory of recovery "arising out of the same facts or events." *Id.* Therefore, if the events surrounding Hollinrake's crime could support a civil claim for damages, the trial court was proper in adopting the restitution plan.

■ Although not charged with criminal theft, Hollinrake's actions nonetheless constituted its civil equivalent—conversion. *See State v. Taylor,* 506 N.W.2d 767, 768 (Iowa 1993). Conversion is the intentional exercise of control over property "which so seriously interferes with the right of another to control it that the actor may justly be required to pay . . . the full value of the chattel." Restatement (Second) of Torts § 222A(1) (1964). Conversion may be committed by obtaining the chattel through fraud or by using a chattel, properly within one's control, in an unauthorized manner. *Id.* §§ 221(b), 228. Not only must Hollinrake's actions meet the elements of conversion, but there must also be a causal connection between his actions and the damage to the victim. *See*

*State v. Ihde*, 532 N.W.2d 827, 829 (Iowa App.1995). Finally, the damages sought must be compensable under the law. Normally, expenses incurred in preparation of trial are not recoverable. *Taylor*, 506 N.W.2d at 768. In conversion cases, however, "the reasonable and necessary expenses incurred in recovering the property are a proper element of damage." *Id.*

■ The events surrounding Hollinrake's criminal misconduct support a civil claim for conversion. Hollinrake, through the fraudulent falsification of public documents and an abuse of his authorization as sheriff, permanently dispossessed tax dollars from the people of Monroe County. He improperly converted those funds regardless of his motivation or the money's intended use. Conversion only requires intentional dispossession; it does not contemplate the actor's motivation. Furthermore, Hollinrake's actions directly caused the need for the independent audit. "A reasonably foreseeable consequence of defendant's taking· of money from the county was that the county would need to conduct a thorough audit to be sure that it had uncovered all the defendant's defalcations." [1] *State v. Whitaker*, 110 N.M. 486, 797 P.2d 275, 284 (App.1990). Hollinrake's

actions shook the fiscal integrity of the sheriff's office and left open the question of further criminal conduct. The only means to adequately uncover the extent of the damage was through an audit. *See Taylor*, 506 N.W.2d at 769. Simply because Hollinrake was cooperative with investigators and the audit did not unearth evidence of further impropriety does not negate the need for independent confirmation. *Whitaker*, 797 P.2d at 283–84. Finally, the costs of the audit were reasonable expenses incurred by the county in recovering the misappropriated funds. *See Taylor*, 506 N.W.2d at 769. Because the State proved the acts surrounding Hollinrake's criminal conduct met all the tort-based prerequisites for recovery of pecuniary loss due to conversion, the trial court properly included the costs of the audit in the restitution plan. Hollinrake's sentence is affirmed.

**AFFIRMED.**

---

1. Hollinrake's criminal act, falsifying a public document, directly caused the damages incurred in seeking the return of the mishandled money. This is in stark contrast to *State v. Starkey*, where there was "no evidence . . . that Starkey's act of leaving the scene [of an accident], the basis of the charge, either caused or aggravated the victim's injuries." *State v. Starkey*, 437 N.W.2d 573, 575 (Iowa 1989). Because the victim's injuries in *Starkey* occurred as result of the accident, not the defendant's act of leaving that accident, the only possible inference was the injuries occurred before the defendant committed the crime. *Id.*