**SIOUX BIOCHEMICAL, INC., Plaintiff,**

v.

**CARGILL, INC., Defendant.**

No. C 04–4106–MWB.

United States District Court, N.D. Iowa, Western Division.

April 11, 2005.

Edmund J. Sease, R. Scott Johnson, Wendy K. Marsh, McKee, Voorhees & Sease, PLC, Des Moines, IA, for Plaintiff.

Chad R. Anderson, Kimberly J. Walker, Faegre & Benson, Des Moines, IA, Jonathan W. Dettmann, Lee M. Pulju, William L. Roberts, Faegre & Benson LLP, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS, IN PART, PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO STRIKE PURSUANT TO RULE 12(f)

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 788
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 788
   B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 789

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 790
   A. Standards For A Rule 12(b)(6) Motion To Dismiss . . . . . . . . . . . . . . . . . . . . 791
   B. Application Of The Standards To The Challenged Claims . . . . . . . . . . . . . . 792
      1. Count V: Fraudulent misrepresentation . . . . . . . . . . . . . . . . . . . . . . . . . 792
         a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 792
         b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 795
      2. Count VI: "Correction of inventorship" . . . . . . . . . . . . . . . . . . . . . . . . . . 798
      3. Count VII: Conversion of intellectual property . . . . . . . . . . . . . . . . . . . 798
         a. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 798
         b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 799
            i. Choice of law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 799
            ii. Conversion claims under Iowa law . . . . . . . . . . . . . . . . . . . . . . . . . 800

4.  *Count VIII: Common-law misappropriation* .......................... 802
    a.  *Arguments of the parties* ....................................... 803
    b.  *Analysis* ...................................................... 803
        i.   *Applicable standards* ...................................... 803
        ii.  *Application of the standards* .............................. 804

*III.  CONCLUSION* ................................................................ 806

In this action for breach of contract, misappropriation of trade secrets and intellectual property, conversion of intellectual property, correction of inventorship of a patent, and fraudulent misrepresentation, arising from a dispute over the defendant's use of the plaintiff's allegedly secret process for manufacturing chondroitin sulfate, the defendant has moved to dismiss half of the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to strike a common-law misappropriation claim as redundant of a similar statutory claim. Although the plaintiff concedes that its claim for correction of inventorship of a patent should be dismissed, it stands firm on the viability of the rest of the challenged claims. Thus, the court must determine whether or not the defendant should be required to answer three of the four challenged claims.

## I.  INTRODUCTION

### A.  Factual Background

On a motion to dismiss, the factual background to the parties' dispute is necessarily taken from the plaintiff's complaint, treating well-pleaded facts as true. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (on a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true). In this diversity action, plaintiff Sioux Biochemical, Inc., alleges that defendant Cargill, Inc., contacted Sioux Biochemical in 1997 or 1998 to discuss Sioux Biochemical's process for manufacturing chondroitin sulfate (Sioux Biochemical's CS Process). The parties entered into a Confidentiality Agreement on February 20, 1998, after which Sioux Biochemical disclosed its CS process to Cargill. The parties entered into a second Confidentiality Agreement on August 17, 1998. Both Confidentiality Agreements prohibited Cargill from using Sioux Biochemical's CS process, except for purposes of evaluating it, or revealing it to any third party without Sioux Biochemical's written permission. The second Confidentiality Agreement remains in force.

Subsequently, on October 1, 1998, Cargill entered into a worldwide, limited, co-exclusive license with Sioux Biochemical to manufacture chondroitin sulfate in accordance with Sioux Biochemical's CS Process. However, on or about July 24, 2002, Cargill informed Sioux Biochemical that it was no longer using Sioux Biochemical's CS Process, because it had developed a new process for the production of chondroitin sulfate. Based on these representations, Sioux Biochemical and Cargill entered into a General Release dated July 24, 2002, whereby Sioux Biochemical discharged Cargill from any further obligations under the October 1, 1998, License Agreement, so long as Cargill was not using Sioux Biochemical's CS Process, and contingent upon confirmation by either Sioux Biochemical directly or by an independent third party that the technology being used by Cargill to manufacture chondroitin sulfate was not Sioux Biochemical's CS Process.

On or about December 8, 2003, more than a year after entering into the General Release, Sioux Biochemical conducted an on-site inspection of Cargill's chondroitin sulfate manufacturing facility. In the course of that inspection, Sioux Biochemi-

cal alleges that it confirmed that Cargill was still using Sioux Biochemical's CS Process. At about the same time, Cargill notified Sioux Biochemical that it had filed its own application for a United States patent on a method for manufacturing chondroitin sulfate naming only Cargill employees as the inventors. Cargill provided Sioux Biochemical with a copy of the patent application, U.S. Serial No. 10/704,-866. The United States Patent and Trademark Office (PTO) published Cargill's patent application on July 29, 2004.

On March 5, 2004, Sioux Biochemical notified Cargill by letter that it considered Cargill to be still bound by the terms of the October 1, 1998, License Agreement, because Cargill was still using Sioux Biochemical's CS Process. In that letter, Sioux Biochemical also challenged Cargill's right to file a patent application on a method for manufacturing chondroitin sulfate, because Sioux Biochemical asserted that the technology involved in the patent application belongs to Sioux Biochemical. By letter dated March 10, 2004, Cargill disputed Sioux Biochemical's assertions in its March 5, 2004, letter. Cargill contended that Sioux Biochemical's CS Process was already in the public domain prior to its disclosure to Cargill and that, consequently, Cargill did not have to honor the terms of the October 1, 1998, License Agreement. However, Cargill also asserted that it was not using Sioux Biochemical's CS Process, so that it could use and attempt to patent its own chondroitin sulfate manufacturing process. On June 4, 2004, Sioux Biochemical filed a protest against Cargill's patent application with the PTO, but that protest has not yet been resolved.

Subsequently, on October 19, 2004, Sioux Biochemical also filed this lawsuit.

### B. Procedural Background

In its October 19, 2004, Complaint, Sioux Biochemical asserts eight claims against Cargill arising from the parties' dispute over use of Sioux Biochemical's CS Process. In **Count I** of its Complaint, Sioux Biochemical alleges breach by Cargill of the October 1, 1998, License Agreement by using Sioux Biochemical's CS Process and selling product produced using that process without compensating Sioux Biochemical. In **Count II,** Sioux Biochemical alleges breach by Cargill of the February 20, 1998, Confidentiality Agreement, and in **Count III,** Sioux Biochemical alleges breach by Cargill of the August 17, 1998, Confidentiality Agreement. In **Count IV,** Sioux Biochemical alleges misappropriation of trade secrets by Cargill in violation of IOWA CODE CH. 550. In **Count V,** Sioux Biochemical alleges fraudulent misrepresentation by Cargill, based on Cargill's allegedly false representations to Sioux Biochemical prior to the signing of the July 24, 2004, General Release that Cargill was no longer using Sioux Biochemical's CS Process and allegedly false representations to Sioux Biochemical and in Cargill's patent application that Cargill employees invented Sioux Biochemical's CS Process and the chondroitin sulfate product resulting from that process. In **Count VI,** Sioux Biochemical seeks "correction of inventorship" of the CS Process disclosed in Cargill's patent application pursuant to 35 U.S.C. § 116 and 35 U.S.C. § 256. In **Count VII,** Sioux Biochemical alleges conversion of intellectual property by Cargill based on Cargill's allegedly secret conversion of Sioux Biochemical's CS Process to Cargill's own use in a manner that made Sioux Biochemical's CS Process part of the public domain. Finally, in **Count VIII,** Sioux Biochemical alleges common-law misappropriation of Sioux Biochemical's CS Process. Sioux Biochemical seeks injunctive relief, compensatory and punitive damages, double damages and attorney fees pursuant to IOWA CODE CH. 550, an order directing the

Director of the PTO to correct inventorship and ownership of Cargill's pending patent application and ordering Cargill to abandon that patent application or assign it to Sioux Biochemical, attorney fees, expenses, and costs.

Cargill was granted an extension of time to answer Sioux Biochemical's Complaint. However, on December 10, 2004, instead of answering Sioux Biochemical's Complaint, Cargill filed its Partial Motion [sic] To Dismiss Pursuant To Rule 12(b)(6) Or, In The Alternative, To Strike Pursuant To Rule 12(f) (docket no. 9), which is now before the court. The motion asserts that **Counts V** through **VIII** of Sioux Biochemical's Complaint, the non-contractual and non-statutory claims, fail to state claims upon which relief can be granted, or, in the alternative, that **Count VIII**, the common-law misappropriation claim, should be stricken as redundant of **Count IV**, the statutory misappropriation claim. Sioux Biochemical resisted Cargill's motion to dismiss on December 23, 2004 (docket no. 16), as to dismissal of **Counts V, VII,** and **VIII**, but did not resist dismissal of Count **VI**, the "correction of inventorship" claim. Cargill filed a reply in further support of its motion to dismiss **Counts V, VII,** and **VIII** on January 6, 2005 (docket no. 19).

The press of other, more urgent matters, including pre-trial motions and other preparations for trial in a federal death-penalty case and a motion for an emergency temporary restraining order in another civil matter, have prevented the court from reaching Cargill's motion to dismiss before now. Although Cargill requested oral arguments on its motion, the court finds that the quality of the briefing and the nature of the issues have obviated the need for oral arguments. Therefore, the court will now resolve Cargill's motion to dismiss on the written submissions.

## II.  LEGAL ANALYSIS

### A.  Standards For A Rule 12(b)(6) Motion To Dismiss

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party, here Sioux Biochemical, are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commer-*

*cial Trust v. Colt's Mfg. Co.,* 77 F.3d 1081, 1083 (8th Cir.1996) (same).

■ On a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. *See* FED.R.CIV.P. 12(b)(6); *see also Buck v. F.D.I.C.,* 75 F.3d 1285, 1288 & n. 3 (8th Cir.1996). However, on a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment. For example, the court may consider documents outside of the pleadings where, as here, "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Retirement Plan,* 187 F.3d 970, 972 n. 3 (8th Cir. 1999) (citing *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir.1997)). Thus, the court may consider, if necessary, the various agreements underlying Sioux Biochemical's contractual claims, as submitted by the parties in support of or resistance to Cargill's motion to dismiss, without converting Cargill's motion to dismiss or strike into a motion for summary judgment.[1]

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver,* 105 F.3d at 397 (citing *In re Syntex Corp. Securities Lit.,* 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

---

1. The court may also take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings, pursuant to Rule 201 of the Federal Rules of Evidence. *See also Cinel v. Connick,* 15 F.3d 1338, 1343 n. 6 (5th Cir.1994) (holding that, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (similar); *cf. Flori-da State Bd. of Admin. v. Green Tree Fin. Corp.,* 270 F.3d 645, 663 (8th Cir.2001) (taking judicial notice of SEC filings in deciding a Rule 12(b)(6) motion to dismiss); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271 (11th Cir. 1999) (same); *United States v. Doyle,* 121 F.3d 1078, 1088 (7th Cir.1997) (taking judicial notice of district court's docket sheet). No such records are at issue in this case, however.

in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

The court will apply these standards to each of the challenged claims in turn.[2]

### B. Application Of The Standards To The Challenged Claims

#### 1. Count V: Fraudulent misrepresentation

Cargill seeks dismissal of **Count V** of Sioux Biochemical's Complaint, which alleges "fraudulent misrepresentation" by Cargill. This claim is based on two allegedly fraudulent statements. First, Sioux Biochemical alleges that, prior to the signing of the General Release on July 24, 2004, Cargill falsely represented to Sioux Biochemical that Cargill was no longer using Sioux Biochemical's CS Process, knowing that representation to be false; that Sioux Biochemical relied on this false statement to its detriment; and that the statement caused damage to Sioux Biochemical. Second, Sioux Biochemical alleges that Cargill falsely represented to Sioux Biochemical and in its patent application to the PTO that Cargill employees were the inventors of Sioux Biochemical's CS Process and the chondroitin sulfate product resulting therefrom, knowing that representation to be false; that Cargill made the statement intending that Sioux Biochemical and the PTO would rely upon it; that Sioux Biochemical and the PTO have relied on the false statement of inventorship and non-use of Sioux Biochemical's CS Process; and that the false statement caused damage to Sioux Biochemical, for example, because if the patent issues, Cargill could prevent others, including Sioux Biochemical, from using Sioux Biochemical's CS Process or selling product resulting from that process. *See* Complaint, Count V, ¶¶ 35–41.

#### a. Arguments of the parties

Cargill seeks dismissal of Sioux Biochemical's "fraudulent misrepresentation"

---

**2.** The court will also address, in reference to **Count VIII**, the standards for Cargill's alternative motion to strike that claim pursuant to Rule 12(f), should the court find that the Count does state a claim upon which relief can be granted.

claim for failure to state a claim upon which relief can be granted. Cargill alleges that, among other defects, Sioux Biochemical has not pleaded any facts that would meet the essential elements of a fraud claim under either Iowa or Minnesota law.[3] As to the allegedly fraudulent misrepresentation that Cargill was no longer using Sioux Biochemical's CS Process, Cargill contends that the Complaint, on its face, demonstrates that Sioux Biochemical did not rely upon the statement. This is so, Cargill contends, because the General Release, on its face, states that it was contingent upon confirmation by either Sioux Biochemical or an independent third party that the technology being used by Cargill to manufacture chondroitin sulfate was not Sioux Biochemical's CS Process and that Sioux Biochemical, in fact, conducted an on-site inspection to confirm whether or not Cargill was using Sioux Biochemical's CS Process. Thus, Cargill argues that Sioux Biochemical cannot plausibly argue that it relied on Cargill's representations to its detriment.

As to the allegedly fraudulent misrepresentation concerning inventorship of the process disclosed in its patent application, Cargill contends, first, that Sioux Biochemical cannot justifiably have relied on alleged misrepresentations to the PTO, its conclusory allegations to the contrary notwithstanding. Again, Cargill contends that Sioux Biochemical did not rely on the purported misrepresentation, because Sioux Biochemical conducted its own inspection of Cargill's CS process and filed a protest with the PTO concerning inventorship in the patent application. In any event, Cargill contends that representations to a third party ordinarily are not sufficient to sustain a claim of fraudulent misrepresentation. Moreover, Cargill contends that Sioux Biochemical cannot show any damages from the purported misrepresentation to the PTO, because the challenge to inventorship has not been resolved by the PTO and no patent has issued. Second, Cargill contends that, under Federal Circuit precedent, to the extent that the fraud claim is based on Cargill's statement to the PTO, it is preempted by federal patent law.

In resistance to dismissal of this Count, Sioux Biochemical argues that Cargill's contention that there is no basis for Sioux Biochemical to show that it justifiably relied to its detriment on Cargill's misrepresentations is "ludicrous." Sioux Biochemical argues that its fraudulent misrepresentation claim is not based solely on Cargill's misrepresentations to the PTO, "but is primarily focused on Cargill's false misrepresentation to Sioux [Biochemical] that it had ceased using Sioux [Biochemical]'s CS technology, upon which Sioux [Biochemical] justifiably relied." Plaintiff's Opposition To Cargill's Partial Motion To Dismiss, 5. The remainder of Sioux Biochemical's arguments concerning **Count V** confirm this "focus," because nowhere does Sioux Biochemical explain how it relied on Cargill's alleged misrepresentations to the PTO concerning inventorship.

As to the alleged misrepresentation that Cargill was no longer using Sioux Biochemical's CS Process, Sioux Biochemical contends that it has alleged in the Complaint that it relied on the misrepresentation to enter into the General Release on July 24, 2002. Sioux Biochemical now contends that, immediately after the parties executed the General Release, Cargill

---

**3.** Cargill's contentions are cast entirely in terms of failure to satisfy Rule 12(b)(6), not in terms of failure to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, which re-

quires a party to plead fraud with particularity. *See* FED.R.CIV.P. 9(b); *see generally Iowa Health Sys. v. Trinity Health Corp.,* 177 F.Supp.2d 897, 914 (N.D.Iowa 2001).

stopped making payments to Sioux Biochemical under the License Agreement and also shortly thereafter stopped producing chondroitin sulfate, so that Sioux Biochemical could not confirm what process Cargill was using until December 2003. Even after Sioux Biochemical confirmed that Cargill was still using Sioux Biochemical's CS Process, Sioux Biochemical argues that Cargill has refused to pay Sioux Biochemical any license fees for use of that process. Thus, Sioux Biochemical contends that relief can be granted on the facts pleaded, notwithstanding its foresight in making the General Release contingent upon confirmation that Cargill had ceased using Sioux Biochemical's CS Process. Still more specifically, Sioux Biochemical contends that it relied on Cargill's misrepresentation to enter into the General Release, which it would never have done otherwise, then was foreclosed from exercising its right to confirm by Cargill's delaying conduct, and that the right of confirmation ultimately made no difference, because Cargill has ignored its obligation to continue paying license fees after Sioux Biochemical discovered that Cargill was still using Sioux Biochemical's CS Process. Sioux Biochemical also argues that there can be no federal preemption by patent law of its misrepresentation claim based on statements that Cargill was no longer using Sioux Biochemical's CS Process.

In reply, Cargill reiterates its contention that the misrepresentation claim based on the statement of inventorship in its patent application is preempted by federal patent law and that, even if it isn't, Sioux Biochemical cannot assert that it justifiably relied on statements to a third party, the PTO. Cargill contends that Sioux Biochemical has made no meaningful response to these arguments, so that **Count V** should be dismissed at least to the extent that it is premised on alleged misrepresentations of inventorship to the PTO.

Cargill also reiterates its contention that the claim based on statements to Sioux Biochemical that Cargill was no longer using Sioux Biochemical's CS Process are equally deficient. Cargill contends that there is an inescapable internal inconsistency in Sioux Biochemical's pleadings, where Sioux Biochemical asserts, on the one hand, that the General Release is of no effect and does not bar any of its claims against Cargill, and on the other hand, that it was damaged by entering into what it alleges is an ineffective release. Because the court must accept as true Sioux Biochemical's contention that it did not give up any legal rights by entering into the General Release, the court cannot find that Sioux Biochemical's claims of damages from entering into the General Release are consistent with that pleading. Cargill also contends that Sioux Biochemical is attempting to salvage its claim by relying on allegations that appear only in an affidavit, but not in the Complaint, concerning the delay in confirmation of Cargill's termination of use of Sioux Biochemical's CS . Process that Cargill purportedly imposed by its conduct. As a matter of fact, Cargill counters that Sioux Biochemical *chose* to sit on its right to confirm for sixteen months. Cargill also contends that Sioux Biochemical has pleaded that whether or not it was delayed in confirming Cargill's termination of use of Sioux Biochemical's CS Process would have made no difference, because Sioux Biochemical alleges that Cargill would simply have disagreed with Sioux Biochemical's determination on that point and would have refused to pay further license fees. Thus, Cargill argues that, under any scenario consistent with the pleadings, Sioux Biochemical would still be bringing suit for overdue royalties, so that there was no detriment to Sioux Biochemical arising from the purported misrepresentations.

### b. Analysis

▮ Although the parties raise a question about whether Minnesota or Iowa law ultimately applies to Sioux Biochemical's fraudulent misrepresentation claim, the court finds that it need not resolve that question now, because the court finds no "true conflict" between the laws of the two jurisdictions that would be applicable to this claim. *See, e.g., Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F.Supp.2d 821, 831 (N.D.Iowa 2004) (noting that a choice-of-law issue is "premature" where there is no "true conflict" between the laws of the nominee states) (citing cases). This court recently noted that, to prove a claim for damages for fraudulent misrepresentation under Iowa law, " 'a plaintiff must prove (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages.' " *Id.* at 844 (quoting *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001), and also citing *In re Marriage of Cutler*, 588 N.W.2d 425, 430 (Iowa 1999), which defines the elements of fraud as (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance, and (6) resulting injury or damage). Similarly, under Minnesota law, "To establish fraud, a plaintiff must demonstrate: '[T]hat [the] defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation [and] (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.' " *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn.2002) (quoting *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn.1992)), *cert. denied*, 537 U.S. 1046, 123 S.Ct. 621, 154 L.Ed.2d 518 (2002). While the two jurisdictions subdivide and number the elements differently, the required proof is ultimately the same, particularly as to the requirements of "reliance" and "damages," which are in dispute here.

▮ Contrary to Cargill's contentions, the court does not find any "internal inconsistency" in Sioux Biochemical's pleadings regarding "reliance" on and "damages" from Cargill's statements that it was no longer using Sioux Biochemical's CS Process that would stand as an "insuperable bar" to Sioux Biochemical's fraudulent misrepresentation claim based on that representation. *Frey*, 44 F.3d at 671 (a motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless there is an "insuperable bar" to relief); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). Rather, Sioux Biochemical may be able to prove facts consistent with its allegations that it relied on the alleged misrepresentation to enter into the General Release and did not promptly exercise its right to confirm because of the misrepresentation, resulting in damage, for example, in the form of inability to collect *in a timely manner* license fees to which it now contends it was entitled. Sioux Biochemical may also be able to prove that the misrepresentation caused a delay that permitted Cargill to prepare a patent application based on a process that was actually invented by and belonged to Sioux Biochemical. Sioux Biochemical may be able to prove either or both of

these scenarios, even if Sioux Biochemical also contends that Cargill would simply have refused to pay license fees notwithstanding the exercise of Sioux Biochemical's right to confirm. A jury could find, consistent with the facts alleged, that Cargill got the benefit of the General Release obtained by its misrepresentation, even if the General Release was supposedly contingent upon confirmation, under the circumstances of this case. In other words, it is consistent with Sioux Biochemical's pleadings for a jury to find that Cargill bought a delay in payment of license fees, as well as the opportunity to pirate Sioux Biochemical's CS Process and to file its own patent application for that process, by misrepresenting to Sioux Biochemical that it was no longer using Sioux Biochemical's CS Process, where Sioux Biochemical would not otherwise have entered into the General Release, even contingent upon a right to confirm (reliance), and that the delay damaged Sioux Biochemical (damages).[4] While the claim of fraudulent misrepresentation based on Cargill's alleged statement that it was no longer using Sioux Biochemical's CS Process may not survive a motion for summary judgment—an issue on which the court takes no position—it does not fail to state a claim upon which relief can be granted.

■ Sioux Biochemical has not responded to Cargill's contentions that the fraudulent misrepresentation claim based on the representations to Sioux Biochemical and the PTO concerning inventorship fails to state a claim upon which relief can be granted, because such a claim is preempted by federal patent law, because a misrepresentation claim cannot be based on

representations to a third party, or both. The court is not convinced that a state law fraud claim is necessarily preempted by federal patent law. *See, e.g., University of Colorado Found., Inc. v. American Cyanamid Co.,* 196 F.3d 1366 (Fed.Cir.1999) (state law claims of fraudulent misrepresentation and unjust enrichment by doctors who claimed to have invented a product based on the defendant's failure to identify them as inventors in a patent application were not necessarily preempted by federal patent law), *cert. denied,* 529 U.S. 1130, 120 S.Ct. 2005, 146 L.Ed.2d 956 (2000). However, Sioux Biochemical has not claimed that its fraud claim based on the inventorship representation falls outside the scope of federal preemption. Similarly, Sioux Biochemical has not cited any Iowa or Minnesota case recognizing a claim for fraudulent misrepresentation based on a defendant's statement to a third party, such as the PTO in this case. What case law the court has found suggests that neither nominee jurisdiction would recognize such a claim under the circumstances alleged here. *See, e.g., Flynn v. American Home Prods. Co.,* 627 N.W.2d 342 (Minn.Ct.App.2001) (rejecting a fraud-on-the-FDA claim on the ground that it was either preempted or would not comply with Minnesota law, citing *Karlstad State Bank v. Fritsche,* 392 N.W.2d 615, 618 (Minn.Ct.App.1986), for the proposition that there is no fraud claim for failure to disclose in the absence of the defendant's direct communication with the plaintiff); *Clark v. McDaniel,* 546 N.W.2d 590 (Iowa 1996) (a claim for fraudulent misrepresentation based on statements

4. In reaching this conclusion, the court has not considered the affidavit of Mr. Kramer attached to Sioux Biochemical's brief or the allegations in the brief regarding the cause of the delay in Sioux Biochemical's exercise of its right to "confirm" that Cargill was no longer using Sioux Biochemical's CS Process, because the affidavit and the allegations fall outside of the pleadings in this case. *See* FED.R.CIV.P. 12(b)(6) (the court cannot consider matters outside of the pleadings without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment); *see also Buck,* 75 F.3d at 1288 & n. 3 (same).

made to a third party was actionable under RESTATEMENT (SECOND) OF TORTS § 533 only because it was "especially likely" that a representation that a seller made to a used car dealer would be passed on to prospective buyers). Cargill is correct that its *ex parte* statement to the PTO that its employees invented the chondroitin sulfate process embodied in its patent application is not the sort of statement that would give rise to liability to another party. Thus, no fraudulent misrepresentation claim in this case can be based on Cargill's allegedly false identification of inventorship *in its patent application.*

On the other hand, a fair reading of the Complaint is that Cargill allegedly represented *to Sioux Biochemical,* as well as the PTO, that Cargill's employees had invented the chondroitin sulfate process that Cargill was using and attempting to patent, in response to Sioux Biochemical's assertion that Cargill was still using Sioux Biochemical's CS Process; indeed, the Complaint does not allege that this statement was made *only in the patent application. See, e.g.,* Complaint, General Facts Regarding The Claims, ¶ 15 ("In December of 2003, Cargill notified Sioux [Biochemical] that it had filed its own U.S. patent application on a method of manufacturing CS, naming only Anil B. Khare and other Cargill employees as the inventors."); *id.,* Count V, ¶ 39 ("Cargill made the false representation [that members of Cargill's company were the first and true inventors of Sioux Biochemical's CS Process and the CS product resulting therefrom] to Sioux [Biochemical] and to the [PTO]."), *and compare id.* at ¶ 37 ("[U]pon

filing its patent application ... Cargill also falsely represented to the [PTO] that members of Cargill's company were the first and true inventors of Sioux's CS Process and the CS product resulting therefrom."). Thus, Sioux Biochemical's allegation of a misrepresentation of inventorship is *not* an allegation of a misrepresentation solely to a third party. Even so, the claim based on a misrepresentation of inventorship directly to Sioux Biochemical fails to state a claim upon which relief can be granted, because there is no "set of facts that could be proved consistent with the allegations" showing reliance by Sioux Biochemical on such a misrepresentation. *See Handeen,* 112 F.3d at 1347 (standard for failure to state a claim) (internal quotation marks and citation omitted). While Sioux Biochemical has alleged a basis for finding both "reliance" and "damages" for the misrepresentation that Cargill was not using Sioux Biochemical's CS Process, there is no comparable basis for finding either "reliance" or "damages," where the Complaint alleges that Sioux Biochemical promptly challenged Cargill's representation of inventorship, both in correspondence with Cargill and in a protest to the PTO, no hint of anything that Sioux Biochemical did or did not do *to its detriment* in reliance on this representation, and no hint of any damages to Sioux Biochemical flowing from the representation of inventorship *to Sioux Biochemical,* as opposed to the purported damage that Sioux Biochemical now asserts would flow from the misrepresentation of inventorship *to the PTO* and the general public.[5]

---

5. Because the parties did not raise the question, the court has not considered whether Sioux Biochemical has pleaded fraudulent misrepresentation with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, including particular allegation of "what was given up or obtained by the fraud." *See, e.g., Iowa Health Sys. v. Trinity*

*Health Corp.,* 177 F.Supp.2d 897, 914 (N.D.Iowa 2001). However, the court doubts that Sioux Biochemical's pleading of fraud based on a misrepresentation of inventorship, even where Sioux Biochemical alleged that the misrepresentation was made directly to Sioux Biochemical, satisfies the requirements of Rule 9(b).

Therefore, **Count V** fails to state a claim of fraudulent misrepresentation to the extent that the claim relies on an alleged misrepresentation by Cargill of inventorship of its patent application. However, **Count V** *does* state a claim of fraudulent misrepresentation to the extent that the claim is based on an alleged misrepresentation by Cargill that it was not using Sioux Biochemical's CS Process. Consequently, Cargill's motion to dismiss will be granted in part and denied in part as to **Count V.**

### 2. Count VI: "Correction of inventorship"

Cargill also challenges **Count VI** of Sioux Biochemical's Complaint on the ground that it fails to state a claim upon which relief can be granted. Sioux Biochemical "does not oppose Cargills motion to dismiss Count VI, but has rendered it moot by dismissing this Count VI, in view of the fact the patent has not yet issued." Plaintiff's Opposition To Cargill's Partial Motion To Dismiss, 6. Because Sioux Biochemical concedes that **Count VI** should be dismissed, this portion of Cargill's motion to dismiss would require little comment, but for the fact that no dismissal by Sioux Biochemical of **Count VI** is actually on record. In the absence of a voluntary dismissal of the claim, Cargill's motion to dismiss **Count VI** is not "moot." Rather, the court will grant Cargill's motion to dismiss **Count VI** in light of Sioux Biochemical's representation that Sioux Biochemical does not oppose dismissal of this claim.

### 3. Count VII: Conversion of intellectual property

In **Count VII**, Sioux Biochemical alleges that Sioux Biochemical created a proprietary method for manufacturing chondroitin sulfate not possessed by Cargill and elected to treat that proprietary method as a trade secret. Sioux Biochemical alleges, further, that it disclosed its proprietary method to Cargill pursuant to contracts that required Cargill to maintain the confidentiality of the process. However, Sioux Biochemical alleges that Cargill violated its obligations to Sioux Biochemical by converting Sioux Biochemical's intellectual property to Cargill's own private use and economic advantage, "all in a manner that was secreted from Sioux [Biochemical], but in a manner which made Sioux's CS Process a part of the public domain." Complaint, Count VII, ¶ 49. Sioux Biochemical alleges that this conversion constituted a wrongful taking of Sioux Biochemical's property while it was entrusted to Cargill and the destruction of that property without Sioux Biochemical's permission or knowledge and without any right to do so. Finally, Sioux Biochemical alleges, "Cargill has therefore wrongfully exercised dominion and control over property of Sioux [Biochemical] without permission to do so, and has destroyed the value of that property, converted it to Cargill's own use, in derogation of Sioux [Biochemical's] property rights under Iowa law relating to personal property, and in so doing, Cargill is liable to Sioux [Biochemical] for conversion for the value of the wrongfully taken and destroyed personal property." *Id.* at ¶ 51.

#### a. Arguments of the parties

In support of its motion to dismiss this claim for failure to state a claim upon which relief can be granted, Cargill contends that Iowa law does not recognize a claim of conversion of intellectual property. More specifically, Cargill asserts that Iowa cases suggest that intellectual property in the form of mere ideas or knowledge is not the type of property that can be the subject of a conversion claim. Cargill contends, further, that Sioux Biochemical has not been deprived of the use of its chondroitin sulfate process and that Cargill's alleged use of that process is not

incompatible with Sioux Biochemical's own use, because both entities can use the process simultaneously.

Cargill also contends that Minnesota law does not recognize a claim for conversion of intellectual property. Rather, Cargill contends that the "personal property" to which a conversion claim under Minnesota law would apply consists of only tangible property or intangible property customarily merged in, or identified with, some document. Finally, if this claim is governed by Minnesota law, Cargill contends that it is preempted by the Minnesota Uniform Trade Secrets Act.

In response, Sioux Biochemical argues that Iowa law, not Minnesota law, applies under Iowa's choice-of-law rules. Sioux Biochemical argues that Iowa has the "most significant relationship" to this tort claim. If Iowa law applies, Sioux Biochemical contends that Iowa cases cited by Cargill do not stand for the proposition that Iowa does not recognize conversion claims for intellectual property; rather, more recent cases applying Iowa law suggest that intellectual property *can* be the subject of a conversion claim. Sioux Biochemical also argues that it has been deprived of the use of its intellectual property, because its customers could find Cargill's patent application on-line and conclude that the process is owned by Cargill, not Sioux Biochemical, such that Sioux Biochemical is infringing Cargill's patent rights. Finally, Sioux Biochemical contends that a recovery for conversion would not be duplicative of any recovery for misappropriation of trade secrets, because damages or injunctive relief under the Iowa Trade Secrets Act may not extend as far as the "full value" damages available for conversion.

### b. Analysis

**i. Choice of law.** The parties raise the question of which forum's law applies to this claim, either Minnesota's or Iowa's. A federal court sitting in diversity must apply the choice of law rules of the forum state—in this case, Iowa. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Iowa law, in turn, employs the "most significant relationship" test in the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS to determine which state's law will govern a claim. *See, e.g., Walker v. State Farm Mut. Auto. Ins. Co.,* 973 F.2d 634, 637 (8th Cir.1992) (recognizing that Iowa had "adopted the Second Restatement of Conflicts as its choice-of-law provision," and that the Second Restatement "applies the law of the state with the most significant interests in the litigation"); *Veasley v. CRST Int'l, Inc.,* 553 N.W.2d 896, 897 (Iowa 1996) (recognizing Iowa's adoption of the "most significant relationship" test); *Cameron v. Hardisty,* 407 N.W.2d 595, 597 (Iowa 1987) (same); *Cole v. State Auto. & Cas. Underwriters,* 296 N.W.2d 779, 781–82 (Iowa 1980) (same).

This court has repeatedly recognized, however, that the "most significant relationship" test varies depending upon whether the claim at issue sounds in contract or tort. *See, e.g., Webster Indus., Inc.,* 320 F.Supp.2d at 831 n. 3; *L & L Builders Co. v. Mayer Assoc. Servs., Inc.,* 46 F.Supp.2d 875, 881 (N.D.Iowa 1999); *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,* 23 F.Supp.2d 974, 1002 (N.D.Iowa 1998); *Harlan Feeders, Inc. v. Grand Labs., Inc.,* 881 F.Supp. 1400, 1405 (N.D.Iowa 1995). While Iowa courts apply RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188 to contract claims, they apply RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145(2) to tort claims. *Dethmers,* 23 F.Supp.2d at 1002 (contract) & 1004 (tort). Thus, the pertinent considerations for this tort claim are "place of injury, place of conduct leading to the injury, domicile of the parties, and the place

where any relationship between the parties is centered." *Id.* at 1004 (citing *Harlan Feeders*, 881 F.Supp. at 1409).

In the present case, the court concludes that the pertinent factors cannot be resolved without recourse to matters outside of the pleadings, which is inappropriate on a motion to dismiss. *See* FED.R.CIV.P. 12(b)(6) (the court cannot consider matters outside of the pleadings without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment); *see also Buck*, 75 F.3d at 1288 & n. 3 (same). Therefore, a final determination of choice of law for this claim must await summary judgment. In the meantime, Sioux Biochemical has adequately pleaded that Iowa law applies to this claim and the factual allegations of the Complaint do not stand as an insuperable bar to such a choice of law. *Frey*, 44 F.3d at 671 (a motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless there is an "insuperable bar" to relief); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

■ *ii. Conversion claims under Iowa law.* Under Iowa law, a "conversion" is described as " 'the wrongful control or dominion over another's property contrary to that person's possessory right to the property.' " *Whalen v. Connelly*, 621 N.W.2d 681, 687 (Iowa 2000) (quoting *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 593 (Iowa 1999)). "Conversion" is the "civil equivalent" of theft. *Iowa v. Hollinrake*, 608 N.W.2d 806, 808 (Iowa Ct.App.2000). Thus, "[c]onversion is the intentional exercise of control over property 'which so seriously interferes with the right of another to control it that the actor may justly be required to pay ... the full value of the chattel.' " *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 222A(1)); *see also Condon Auto Sales*, 604 N.W.2d at 593 ("Conversion is the

wrongful control or dominion over another's property contrary to that person's possessory right to the property. *Ezzone v. Riccardi*, 525 N.W.2d 388, 396 (Iowa 1994). The wrongful control must amount to a serious interference with the other person's right to control the property. *Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 247 (Iowa 1988) (citing RESTATEMENT (SECOND) OF TORTS § 222A(1) (1965))."). This court has explained,

> Iowa courts list the following factors as appropriate to consider whether the interference is sufficiently serious to find a conversion:
>
> > (a) the extent and duration of the actor's exercise of dominion or control;
> >
> > (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
> >
> > (c) the actor's good faith;
> >
> > (d) the extent and duration of the resulting interference with the other's right of control;
> >
> > (e) the harm done to the chattel;
> >
> > (f) the inconvenience and expense caused to the other.

*Kendall/Hunt*, 424 N.W.2d at 247; *McCray [v. Carstensen]*, 492 N.W.2d [444,] 445 [ (Iowa Ct.App.1992) ]; *Larson [v. Great West Cas. Co.]*, 482 N.W.2d [170,] 174 [ (Iowa Ct.App.1992) ].

*Rural Water Sys. No. 1 v. City of Sioux Center, Iowa*, 29 F.Supp.2d 975, 997 (N.D.Iowa 1998), *aff'd in pertinent part and rev'd on other grounds*, 202 F.3d 1035 (8th Cir.2000), *cert. denied*, 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000).

■ Contrary to Cargill's contention, the Iowa Supreme Court's decision in *Kendall/Hunt Publishing Co. v. Rowe*, 424 N.W.2d 235 (Iowa 1988), does not hold or reasonably suggest that Iowa would not recognize a claim for conversion of intellectual property. Applying the same fac-

tors listed above to a claim of conversion of the design and layout of a book, the court in *Kendall/Hunt* concluded that the district court properly held that the plaintiffs were never deprived of use of the design and layout of the book; no harm was done to their design and layout; their control of the layout was never removed from them; the defendants' use of the design and layout was not incompatible with the plaintiff's own continuing usage; and the defendants had acted in good faith. *Kendall/Hunt*, 424 N.W.2d at 247. The court then remarked, "[W]e agree with the district court that the law of conversion does not apply to the design and layout of printed material." *Id.* This conclusion, however, relied on the specific application of the pertinent factors; it cannot be read, as Cargill asserts, to mean that no claim of conversion can ever involve intellectual property.

In *Marley Co. v. FE Petro, Inc.*, 38 F.Supp.2d 1070 (S.D.Iowa 1998), a decision of this court's sister district upon which Cargill also relies, Judge Vietor likewise rejected a defendant's contention that the court in *Kendall/Hunt* found the tort of conversion inapplicable to intellectual property. *Marley*, 38 F.Supp.2d at 1077. Judge Vietor found, as did this court, that the court in *Kendall/Hunt* did not adopt a general rule against the application of conversion to intellectual property, but only found that conversion did not apply to the design and layout of printed material. *Id.* (citing *Kendall/Hunt*, 424 N.W.2d at 247). Judge Vietor noted, further, that in *Kendall/Hunt*, "although the court stated that its decision was based upon the nature of the property at issue, its analysis concentrated on the fact that the defendant's use of the property was not inconsistent with the plaintiff's continued use of the property." *Id.* (again citing *Kendall/Hunt*, 424 N.W.2d at 247). Nevertheless, Judge Vietor predicted that the Iowa Supreme Court would *not* apply a conversion claim

to intellectual property, because "conversion" has traditionally been applied only to chattels or tangible property that could be lost or found; expansion of the application of the tort beyond these traditional limits had been slow; applicability of conversion to intellectual property remained hotly disputed; and, "[a]bsent some indication from the courts of Iowa embracing such an expansion, [Judge Vietor was] unable to conclude that the Iowa Supreme Court would recognize [the claimant's] ideas, and not the drawings themselves, as the type of property that can be converted." *Id.* at 1077–78. Judge Vietor noted that the Iowa Supreme Court was "especially unlikely to expand the law of conversion under circumstances where, as in [that] case, the law and concepts related to the misappropriation of trade secrets provide a more appropriate avenue or redress for the complainant, and where any recovery under the expended conversion cause of action would merely be duplicative." *Id.* at 1078. Finally, Judge Vietor believed that federal courts should be especially cautious to recognize new state-law causes of action, where establishing broad legal precedents could lead to unintended results in future cases. *Id.*

■ This court is not convinced by Judge Vietor's reasoning. This court notes that, while a party may not ultimately recover duplicative damages, a party is generally entitled to assert alternative theories for relief. *See* FED.R.CIV.P. 8(e)(2) ("A party may set forth two or more statements of a claim ... alternately or hypothetically.... A party may also state as many separate claims ... as the party has regardless of consistency ...."); *see also Peter Kiewit Sons' Co. v. Summit Constr. Co.*, 422 F.2d 242, 271 (8th Cir.1969) ("Federal Rule of Civil Procedure 8(e)(2) clearly permits setting forth two or more statements of a claim alternately or hypotheti-

cally and stating as many separate claims as may exist regardless of consistency, subject of course to the qualification that the plaintiff's attorney must sign the complaint, his signature constituting a certificate that he has read the pleading and to the best of his knowledge, information and belief there is good ground to support it and it is not interposed for delay."). Also, while Judge Vietor's cautious approach has much to recommend it, this court's cautiousness takes a different form: This court can find no sufficient indication that the Iowa Supreme Court would *reject* a conversion claim in the circumstances pleaded here, such that it would be appropriate to hold that conversion is inapplicable as a matter of law. If the decision in *Kendall/Hunt* demonstrates anything, it is that determination of the viability of a conversion claim should be based on consideration of the factors listed in RESTATEMENT (SECOND) OF TORTS § 222A(1). *See Kendall/Hunt*, 424 N.W.2d at 247. With these factors as the focal point, this court cannot say, first, that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in support of Sioux Biochemical's conversion claim. *Handeen*, 112 F.3d at 1347 (standard for dismissal for failure to state a claim upon which relief can be granted) (internal quotation marks and citations omitted). Second, consideration of these factors is best conducted on a complete record, such as on a motion for summary judgment. Third, under appropriate circumstances, where the case is still early in its development, it might be appropriate to certify to the Iowa Supreme Court the question of whether a conversion claim under Iowa law applies to intellectual property. *Cf. Dethmers*, 23 F.Supp.2d at 1006–07 (discussing whether or not a claim for conversion will lie for intangible interests and concluding that the question of whether the formulation of "property" for purposes of a conversion

claim under Nebraska law would extend to intangible property was a question best left to the Nebraska courts).

Therefore, this court will deny Cargill's motion to dismiss Sioux Biochemical's conversion claim, because the court cannot find that there is an "insuperable bar" to Sioux Biochemical's conversion claim. *Cf. id.* at 1007 ("The court concludes that, because Nebraska has not specifically foreclosed the possibility of a claim for conversion of an intangible, unpatented idea, this court cannot conclude that there is an 'insuperable bar to relief' on Dethmers's conversion claim.") (citing *Parnes*, 122 F.3d at 546, and *Frey*, 44 F.3d at 671, for the "insuperable bar" standard).

### 4. Count VIII: Common-law misappropriation

In **Count VIII** of its Complaint, Sioux Biochemical asserts a common-law claim of "misappropriation." More specifically, in this Count, Sioux Biochemical alleges that it invested substantial time, money, and effort in the development of Sioux Biochemical's CS Process, but that Cargill, at little or no cost to itself, has appropriated Sioux Biochemical's property right and intellectual labors, and in so doing, has frustrated the primary purpose of Sioux Biochemical's asset, which was to use it to Sioux Biochemical's own commercial advantage. Sioux Biochemical alleges, further, that, by appropriating Sioux Biochemical's CS Process, Cargill has unlawfully and unfairly competed with Sioux Biochemical, destroyed the trade secret value of Sioux Biochemical's CS Process, and caused commercial damage to Sioux Biochemical. Therefore, Sioux Biochemical seeks damages for Cargill's misappropriation of Sioux Biochemical's CS Process. *See* Complaint, Count VIII.

### a. Arguments of the parties

In support of its motion to dismiss this claim, Cargill contends that Minnesota's version of the Uniform Trade Secrets Act, which Cargill contends is applicable here, expressly preempts Sioux Biochemical's common-law misappropriation claim. Cargill contends that Iowa's version of the Uniform Trade Secrets Act also "implicitly" preempts Sioux Biochemical's common-law misappropriation claim. This is so, Cargill contends, because the common-law claim merely "mimics" the statutory claim, and the Uniform Trade Secrets Act was intended to codify existing common-law standards. Allowing a parallel common-law claim, Cargill contends, could allow a conflicting body of common law to undermine the statutory scheme.

In the alternative, Cargill contends that Sioux Biochemical's common-law misappropriation claim should be stricken as redundant pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Cargill argues that the common-law claim merely recasts the same elements as the statutory claim under the guise of a different theory.

In resistance to dismissal of its common-law misappropriation claim, Sioux Biochemical argues that even Cargill has recognized that the Iowa Uniform Trade Secrets Act does not include the "preemption" provision present in the Minnesota version of the Act and that, in a long series of cases, the Iowa courts have refused to hold that common-law misappropriation claims are preempted by the statute. Sioux Biochemical also argues that the elements of the statutory and common-law misappropriation claims are *not* identical. First, Sioux Biochemical contends that it is not immediately apparent that Sioux Biochemical's "property right and intellectual labors" are necessarily the same as the "trade secrets" under the statutory claim. Sioux Biochemical also contends that the statutory claim, but not the common-law claim, depends upon allegations that the trade secrets offered "an opportunity for competitive advantage," were not generally known, and had been "treated with reasonable precaution for confidentiality" by Sioux Biochemical. In short, Sioux Biochemical has distinguished between the two kinds of claims, at least in part, on the basis of "secrecy" and "individualized labor in developing the matter misappropriated" requirements. Thus, Sioux Biochemical contends that the claims are not "redundant" of each other. Because the claims are not "redundant," Sioux Biochemical contends, further, that the common-law claim should not be dismissed or stricken. In the absence of statutory preemption, Sioux Biochemical contends that there is no "insuperable bar" to its common-law misappropriation claim.

In reply, Cargill points out that Sioux Biochemical concedes that its common-law misappropriation claim must be dismissed if Minnesota law applies. Cargill also contends that the claim must be dismissed even if Iowa law applies, because it is either preempted by or redundant of the statutory misappropriation claim in **Count IV.** Cargill contends that Sioux Biochemical's attempts to make the common-law claim an entirely different tort are unavailing, because no such separate tort has been recognized under Iowa law and to recognize such a tort would fly in the face of the purposes of the Iowa Uniform Trade Secrets Act.

### b. Analysis

***i. Applicable standards.*** The parties once again raise the question of which state's law applies to Sioux Biochemical's common-law misappropriation claim. However, the court once again concludes, as it did in Section II.B.3.b.i., which addressed Sioux Biochemical's conversion

claim, that a determination on the choice of law for this tort claim is premature. Thus, the question is whether there is an insuperable bar to Sioux Biochemical's common-law misappropriation claim under *Iowa* law, the law under which the claim is pleaded.

Cargill contends that this claim not only fails to state a claim upon which relief can be granted, so that it should be dismissed pursuant to Rule 12(b)(6), but that the claim is "redundant" of the statutory misappropriation claim in **Count IV**, such that it should be stricken pursuant to Rule 12(f). The court explained the standards for a Rule 12(b)(6) motion to dismiss above. Thus, the court need only add here a brief discussion of the standards for a Rule 12(f) motion to strike.

Rule 12(f) provides in pertinent part, "Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED.R.CIV.P. 12(f). In *Dethmers Manufacturing Company v. Automatic Equipment Manufacturing Company*, 23 F.Supp.2d 974 (N.D.Iowa 1998), after a survey of precedents, this court concluded "that mere duplicative remedies do not necessarily make claims 'redundant' within the meaning of Rule 12(f), if the claims otherwise require proof of different elements; however, a claim that merely recasts the same elements under the guise of a different theory may be stricken as redundant pursuant to Rule 12(f)." *Dethmers*, 23 F.Supp.2d at 1009.

*ii. Application of the standards.* The parties recognize that the Iowa Uniform Trade Secrets Act does *not* contain the preemption provision found in the Minnesota Uniform Trade Secrets Act. *See* IOWA CODE CH. 550; *and compare* MINN.STAT. § 325C.07(a). Thus, the Iowa version of the Act does not expressly preempt Sioux Biochemical's common-law misappropriation claim. Contrary to Cargill's contentions, the court also cannot find that the Iowa Uniform Trade Secrets Act "implicitly" preempts a common-law misappropriation claim, where the legislature has declined to include a preemption provision, because it follows from the legislature's omission of a preemption provision that the legislature intended to allow common-law claims to survive. *See 205 Corp. v. Brandow*, 517 N.W.2d 548, 551–52 (Iowa 1994) ("Before adopting the uniform trade secrets Act, the legislature considered and chose to omit section seven of the uniform act, which would have specifically displaced all other trade secret recoveries. We think it is clear that the omission was deliberate. We have moreover said that 'statutes will not be so interpreted as to deprive one common-law right unless the statute unequivocally so states.' *Price v. King*, 259 Iowa 921, 924, 146 N.W.2d 328, 330 (1966). Chapter 550 has not preempted all tort theories involving trade secrets."). Thus, if anything, the lack of a preemption provision in IOWA CODE CH. 550 suggests that the statute does not raise an insuperable bar to a common-law misappropriation claim.

Nor does case law raise an insuperable bar. In *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299 (Iowa 1998), the Iowa Supreme Court declined to recognize a common-law claim of misappropriation of intellectual property in addition to a statutory misappropriation claim. However, the court did not do so because the jury in that case had not apportioned any of the damages in the case to the common-law theory, thus mooting the question of whether or not such a claim should be recognized. *Olson*, 579 N.W.2d at 316. Thus, the Iowa Supreme Court has not yet decided whether a common-law misappropriation claim of the type Sioux Biochemical is asserting in **Count VIII** should be recognized in Iowa.

In the absence of Iowa precedent, Sioux Biochemical relies on *federal* precedent, *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), for recognition of its common-law misappropriation claim. Cargill is correct that *International News Service* is a pre-*Erie* case that is no longer good *federal* authority, because federal courts do not have the authority to formulate common-law principles in suits arising under state law. *See, e.g., McKevitt v. Pallasch*, 339 F.3d 530, 534 (7th Cir.2003) (recognizing that *International News Service* "no longer is legally authoritative because it was based on the federal courts' subsequently abandoned authority to formulate common law principles in suits arising under state law though litigated in federal court"). On the other hand, Sioux Biochemical is correct that some states have recognized a common-law misappropriation claim of the type authorized in *International News Service* as a matter of state law. *See id.* ("[T]he doctrine [*International News Service*] announced has been adopted as the common law of a number of states, including Illinois.") (citing *Board of Trade v. Dow Jones & Co.*, 98 Ill.2d 109, 74 Ill.Dec. 582, 456 N.E.2d 84, 88 (1983)); *see also Atlantic Mut. Ins. Co. v. Badger Med. Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486, 489–90 (App.1995) ("The common law tort of misappropriation, first recognized in *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), was applied by the Wisconsin Supreme Court in *Mercury Record Productions, Inc. v. Economic Consultants, Inc.*, 64 Wis.2d 163, 218 N.W.2d 705 (1974), *cert. denied*, 420 U.S. 914, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975)."); *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217–18 (Tex.App.1993) (reiterating that the Texas Court of Civil Appeals adopted the reasoning of *International News* in *Gilmore v. Sammons*, 269 S.W. 861, 863 (Tex.Civ.App.1925), and concluding that the common-law misappropriation tort was still viable in Texas); *American Television and Communications Corp. v. Manning*, 651 P.2d 440, 444 (Colo. Ct.App.1982) (recognizing that the facts in the case established the common-law tort of misappropriation recognized in *International News*, which was sufficient to establish likelihood of success on the merits for purposes of a preliminary injunction); *McCord Co. v. Plotnick*, 108 Cal.App.2d 392, 239 P.2d 32 (1951); *Metropolitan Opera Assoc. v. Wagner–Nichols Recorder*, 199 Misc. 786, 101 N.Y.S.2d 483 (1950), *aff'd*, 279 A.D. 632, 107 N.Y.S.2d 795 (1951). Under the circumstances, this court concludes that it might be more appropriate to certify to the Iowa Supreme Court the question of whether or not Iowa law recognizes a common-law misappropriation claim of the type Sioux Biochemical asserts here. *Cf. Dethmers*, 23 F.Supp.2d at 1006–07 (discussing whether or not a claim for conversion will lie for intangible interests and concluding that the question of whether the formulation of "property" for purposes of a conversion claim under Nebraska law would encompass intangible interests was a question best left to the Nebraska courts, but where the parties did not wish to certify the question, the court would not dismiss the conversion claim in the absence of a Nebraska decision specifically foreclosing such a claim). Certainly, there is at present no "insuperable bar" to such a common-law claim under Iowa law that would warrant dismissal. *Cf. id.* at 1007 ("The court concludes that, because Nebraska has not specifically foreclosed the possibility of a claim for conversion of an intangible, unpatented idea, this court cannot conclude that there is an 'insuperable bar to relief' on Dethmers's conversion claim.") (citing *Parnes*, 122 F.3d at 546, and *Frey*, 44 F.3d at 671, for the "insuperable bar" standard).

Because this claim is not subject to an "insuperable bar," the pertinent question is not one of failure to state a claim as a ground for dismissal under Rule 12(b)(6), but one of "redundancy" of the two claims, where "redundancy" might warrant striking the common-law claim pursuant to Rule 12(f). *See id.* at 1009 (a claim that is "redundant" may be stricken pursuant to Rule 12(f)). Again, in *Dethmers,* this court concluded "that mere duplicative remedies do not necessarily make claims 'redundant' within the meaning of Rule 12(f), if the claims otherwise require proof of different elements; however, a claim that merely recasts the same elements under the guise of a different theory may be stricken as redundant pursuant to Rule 12(f)." *Dethmers,* 23 F.Supp.2d at 1009.

In *Dethmers,* this court considered whether a common-law claim of "misappropriation of intellectual property" under Nebraska law was redundant of common-law and statutory claims of misappropriation of "trade secrets." *See id.* at 1008–11. In *Dethmers,* this court concluded that the common-law misappropriation claim was not specifically foreclosed under Nebraska law and was not necessarily redundant of other theories of recovery, so that the claim should not be stricken. *Id.* at 1011. Here, the court finds that Sioux Biochemical's common-law misappropriation claim in **Count VIII,** *as pleaded,* likewise is not necessarily redundant of the statutory claim in **Count IV.** In order to prevail on a statutory claim of misappropriation of trade secrets under Iowa law, a plaintiff must prove the following: (1) the existence of a trade secret, as defined by Iowa Code § 550.2; (2) acquisition of the secret as a result of a confidential relationship; and (3) unauthorized use of the secret. *See, e.g., Lemmon v. Hendrickson,* 559 N.W.2d 278, 279 (Iowa 1997); *Kendall/Hunt,* 424 N.W.2d at 245–46; *Basic Chem., Inc. v. Benson,* 251 N.W.2d 220, 226 (Iowa 1977). On the

other hand, the elements of the misappropriation tort first authorized in *International News Service* are the following: (1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff. *See, e.g., Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis.2d 202, 267 N.W.2d 242, 250 (1978). Thus, "secrecy" and "acquisition through a confidential relationship" are not elements of the tort as defined in *International News Service,* but they are elements of the statutory misappropriation tort under Iowa law. Moreover, the property subject to a misappropriation claim is defined in entirely different ways under the two torts. While it is possible that the two claims are ultimately *factually redundant,* that is a matter best left for determination on a complete record, such as by motion for summary judgment. At the pleadings stage, however, Sioux Biochemical's common-law misappropriation claim will not be stricken as "redundant."

Therefore, this portion of Cargill's motion to dismiss, or in the alternative, to strike, will also be denied.

### III. CONCLUSION

With two exceptions, the claims challenged in Cargill's motion to dismiss *do* state claims upon which relief can be granted *as those claims are pleaded.* The first exception is that portion of the "misrepresentation" claim in **Count V** that is based on alleged misrepresentations by Cargill that its employees invented the chondroitin sulfate process that it is attempting to patent. The second exception is **Count VI,** the "correction of ownership" claim, which Sioux Biochemical concedes is subject to dismissal. The surviving claims may be shown to be deficient upon a more complete record, but the court must assess only the adequacy of the pleading of the

claims at this time. Moreover, because Cargill asserts that the Iowa Supreme Court has not and would not recognize the "conversion" claim in **Count VII** or the common-law "misappropriation" claim in **Count VIII,** the court would consider a timely motion to certify to the Iowa Supreme Court the question of whether such claims are recognized under Iowa law. However, at present, with the exceptions noted above, the court finds no "insuperable bar" to the challenged claims.

THEREFORE,

1. That portion of Cargill's December 10, 2004, Partial Motion [sic] To Dismiss Pursuant To Rule 12(b)(6) Or, In The Alternative, To Strike Pursuant To Rule 12(f) (docket no. 9) seeking dismissal of **Count V** is **granted in part and denied in part,** as follows:

a. The motion to dismiss is **granted** as to that part of **Count V** alleging fraudulent misrepresentation based on an alleged misrepresentation by Cargill of inventorship in its patent application; but

b. The motion to dismiss is **denied** as to that part of **Count V** alleging fraudulent misrepresentation based on an alleged misrepresentation by Cargill that it was not using Sioux Biochemical's CS Process.

2. That portion of Cargill's December 10, 2004, Partial Motion [sic] To Dismiss Pursuant To Rule 12(b)(6) Or, In The Alternative, To Strike Pursuant To Rule 12(f) (docket no. 9) seeking dismissal of **Count VI,** the claim for "correction of inventorship," is **granted.**

3. That portion of Cargill's December 10, 2004, Partial Motion [sic] To Dismiss Pursuant To Rule 12(b)(6) Or, In The Alternative, To Strike Pursuant To Rule 12(f) (docket no. 9) seeking dismissal of **Count VII,** the claim for "conversion," is **denied.**

4. That portion of Cargill's December 10, 2004, Partial Motion [sic] To Dismiss Pursuant To Rule 12(b)(6) Or, In The Alternative, To Strike Pursuant To Rule 12(f) (docket no. 9) seeking dismissal of **Count VIII,** the common-law claim for "misappropriation," is **denied.**

**IT IS SO ORDERED.**